Victor A. Sahn (CA Bar No. 97299)
vsahn@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for David Schwartzman, Debtor
and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>DAVID SCHWARTZMAN,<br><br>Debtor. | CASE NO. 1:09-bk-16565-MT<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION TO APPROVE COMPLETION OF CREDIT COUNSELING COURSE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID SCHWARTZMAN IN SUPPORT THEREOF**<br><br>Date: July 13, 2009<br>Time: 10:00 a.m.<br>Place: Courtroom 302 |

**PLEASE TAKE NOTICE** that at the time and place ascribed above, David Schwartzman, the undersigned and the debtor and debtor-in-possession herein (the "Debtor"), will and hereby does respectfully move this Court for an order approving his post-petition completion of the requirements of 11 U.S.C. §109(h). Section 109(h) provides that a debtor is required to complete a debt counseling course prior to filing a bankruptcy petition. The Debtor did not complete a debt counseling course prior to filing, but has now done so. As discussed herein, exigent circumstances mandated the filing of an emergency bankruptcy petition, which made obtaining pre-petition debt counseling services impractical.

[MSH\BANKR\526745.1]

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(a)(7), any party opposing the relief requested in the Motion must file and serve a written opposition no later than fourteen (14) days prior to the hearing on the Motion. Pursuant to Local Rule 9013-1(a)(11), failure of any party to so file and serve such written opposition may be deemed consent to the granting of the Motion.

Based upon the foregoing, the attached memorandum of points and authorities, and the declarations, the Debtor respectfully requests that the Court approve his post-petition completion of the requirements of Section 109(h).

DATED: June 16, 2009

Respectfully submitted,

**Sulmeyer**Kupetz
A Professional Corporation

By: /s/ Victor A. Sahn
Victor A. Sahn
Attorneys for David Schwartzman, Debtor and Debtor in Possession

[MSH\BANKR\526745.1]

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## STATEMENT OF FACTS

1.  The Debtor is in the business of developing and then selling off real estate projects. These projects are primarily situated in the State of California and are mostly located in Southern California. The Debtor develops single-family residential projects, apartment projects and condominium projects, and various commercial projects including self-storage space, retail space and office space.

2.  The Debtor's business has been damaged in its business by three different kinds of events that have occurred over the last year. First, the Debtor's primary financial partner (or the financial partner of the development entity that Mr. Schwartzman controls, which is known as DS Ventures, LLC), Lehman Brothers ("Lehman"), filed a Chapter 11 case in September, 2008 in the Southern District of New York. Lehman was a significant financial partner on the Debtor's projects and provided significant capital that funded the construction and/or development of these projects. Once Lehman filed its bankruptcy case, the funding for the Debtor's projects from Lehman ended. The Debtor and his various entities, were left to fund the various development costs and other items not included in the various construction loans on the real estate projects. This eventually created significant liquidity problems especially when weighed along with the other events described immediately below.

3.  The second issue that confronted the Debtor in connection with his real estate projects was the downturn in the economy which has become familiar as reflected in the many recent Chapter 11 filings for real estate projects in Southern California. The Debtor's projects have been negatively affected by these events which have made them more difficult to finance or refinance when the necessity to do so arose in certain instances. Further, generally stated, there has been some decline in the value of these projects that has interfered with construction funding by construction financiers

[MSH\BANKR\526745.1]    3

1 or has made it difficult to obtain construction funding on those projects which have been entitled for development.

4. The final issue which lead the Debtor to file this Chapter 11 case has been the actions of certain project lenders relating to breaches of their obligations to lend in accordance with their loan agreements. These lenders deny these allegations, however, the Debtor has retained counsel to investigate and commence litigation with regard to these claims. However, for purposes of explaining the third category of reasons behind his Chapter 11 filing, it has been the failure of certain of his lenders to meet their contractual obligations under their loan agreements. As a result, the Debtor has been unable to finish certain projects, and has had the loans called on those projects and has been pursued individually on his guarantees.

5. The Debtor's intention, in filing his personal Chapter 11 case, was to address the significant liabilities that he has on account of guarantees that he issued to the construction lenders that were utilized on the various development projects. The quantifiable potential liabilities associated with the Debtor's guarantees range between $37-$75 Million.

6. While the issues which created the need for the Debtor to seek bankruptcy protection are set forth in paragraphs 2 through 4 above, the final *event* which necessitated his Chapter 11 filing on an emergency basis was an action by Central Pacific Bank (one of the lenders against whom a lender liability action has been commenced) to attach the Debtor's assets. At a hearing which occurred on May 28, 2009 in Los Angeles Superior Court, Central Pacific obtained a Writ of Attachment for over $11 Million against the Debtor, an attachment in a similar amount against Debtor's affiliate, and an attachment for approximately $3.5 Million against a trust who had issued a limited guarantee in favor of Central Pacific in regard to their loan(s) to various of the development entities that the Debtor controls.

7. The Debtor would have been paralyzed in terms of his ability to continue in business if the Writ of Attachment had been permitted on his cash and stock

[MSH\BANKR\526745.1]    4

accounts as the funds from these accounts have been used to underwrite the development costs of the Debtor's various projects. Accordingly, for this particular reason and for the reasons discussed above in general, this Chapter 11 case was filed.

8.  After the ruling of the Court was announced on Thursday, May 28, 2009 granting Central Pacific a writ of attachment against Mr. Schwartzman's assets, the assets of the Trust, and the assets of affiliated entity, the Debtor, various lawyers representing him, San Feliciano and other affiliates, dedicated all of their time to first, exploring a consensual standstill agreement with Central Pacific, and when those efforts failed, preparing to file bankruptcy petitions for San Feliciano and for the Debtor personally. The Debtor had always viewed bankruptcy as a last resort, and until the "eleventh hour" believed that it could be avoided.

9.  Once it was determined that the Debtor and San Feliciano (because of an immediately pending non-judicial foreclosure sale scheduled against the San Feliciano property) had no option but to file bankruptcy, the Debtor and his professionals started preparing for the bankruptcy filings. The bankruptcy preparations started and continued through the weekend that followed the entry of the writ of attachment orders. During that time, the Debtor's focus was on identifying the information required to commence the bankruptcy cases, making arrangements to fund required retainers, determining which entities would need to file bankruptcy, and preparing a complete list of creditors for each of bankruptcy case.

10. During the weekend preparations for filing for San Feliciano and for the Debtor, the Debtor did not participate in any debt counseling courses. In the haste of preparations for the emergency filings for two cases, the Debtor was not advised that the debt counseling must be completed prior to the commencement of his individual case.

11. On June 15, 2009, the Debtor successfully completed a debt counseling course with Start Fresh Instructional, LLC. Attached hereto as Exhibit 1 is a true and correct copy of the certificate demonstrating his completion of the course.

[MSH\BANKR\526745.1]    5

## II.
## THE COURT HAS THE AUTHORITY TO APPROVE THE DEBTOR'S CURE OF THE FILING DEFICIENCY

While Section 109(h) requires, on its face, that a debtor must complete a credit counseling course *prior* to commencing a case, there is ample authority for the Court to either (a) excuse compliance with that Code section, or (b) to allow the Debtor to cure the failure to complete the course post-petition.

Section 109(h)(3) provides that "Subject to subparagraph (B), the requirements of paragraph (1) shall not apply with respect to a debtor who submits to the court a certification that--(i) describes exigent circumstances that merit a waiver of the requirements of paragraph (1); (ii) states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 5-day period beginning on the date on which the debtor made that request; and (iii) is satisfactory to the court." Here the Debtor has demonstrated the exigent circumstances that prevented him from obtaining the pre-petition debt counseling. However, the Debtor cannot meet the second part of the test, in that he did not request pre-petition counseling. Given the fact that counseling is available via the internet on the weekends presumably at any time of the day, a leading commentator on bankruptcy law has stated that this requirement is "largely academic". 2-109 Collier on Bankruptcy-15th Edition Rev. P 109.09.

Notwithstanding the fact that the Debtor can presumably not qualify for the exemption provided for under Section 109(h)(3), several bankruptcy judges, including most significantly, the Chief Judge for the Central District of California, Vincent P. Zurzolo, have concluded that the pre-petition debt counseling requirements of Section 109(h) are not jurisdictional, such that dismissal is mandated. In re Manalad, 360 B.R. 288 (Bankr. C.D.Cal. 2007). In Manalad, the debtor failed to participate in pre-petition credit counseling, and cured the defect only after the Court had ordered him to do so, some 200 days after the petition date. The Office of the United States Trustee had filed a

[MSH\BANKR\526745.1]    6

motion to dismiss the debtor's chapter 13 case. Judge Zurzolo determined that (a) dismissal was not mandated by the Bankruptcy Code, in that the pre-petition debt counseling requirement was not jurisdictional in nature (a conclusion of law that was joined by this Honorable Court); and (b) that an appropriate standard for whether a debtor should be permitted an opportunity to cure the defect is as follows:

> "1. The debtor has a reasonable explanation for not participating in budget and credit counseling within 180 days prior to filing a bankruptcy petition;
>
> 2. The debtor participates in budget and credit counseling once the debtor learns that it is necessary; and
>
> 3. At the budget and credit counseling session, it is determined that the individual's debts could not have been paid outside bankruptcy."

Id., at 308.

In Manalad, Judge Zurzolo made findings of fact that (a) the debtor's explanation that his counsel had advised him that 109(h) did not apply to him because his debts were not primarily consumer debts in nature, was a sufficient justification for the failure; (b) that the debtor did comply and ultimately attend credit counseling; and (c) that the fact that a budget and repayment plan was not prepared by the approved credit counseling agency was evidence that the Debtor did not have a better payment alternative than through bankruptcy. The Court went on to state that "I conclude that the provisions of BAPCPA leave room for an individual to decide if bankruptcy is the appropriate option without first hearing the magic words that may be dispensed during budget and credit counseling." Id. at 310. Based on these above-stated findings of fact, the Court denied the motion to dismiss the debtor's bankruptcy case.

In the case at bar, the facts are even more compelling, and certainly satisfy the standards set forth in Manalad, for permissive cure of the debt counseling requirements. First, as explained above, the Debtor's decision to file Chapter 11 was as a result of a multi-million dollar writ of attachment being issued against him, and subsequent failed negotiation efforts with the creditor who obtained the writ. The

decision was also coupled with a decision to file bankruptcy for an affiliated entity, San Feliciano. Thereafter, during and through the weekend that followed the issuance of the writ of the attachment focus of the Debtor and his counsel was on preparing the petitions and getting them filed before any precipitous actions were taken by the attachment lien creditor. During this flurry of activity, the requirement of debt counseling was not discussed with counsel. Immediately on learning of the requirement, the Debtor completed the course, as is exemplified by Exhibit 1. Finally, the Debtor's case is not a simple consumer case that was likely envisioned by Congress when it enacted the debt counseling requirements. The Debtor is not an individual who is seeking to discharge credit card debts or escape overwhelming debts related to personal expenses. The Debtor's filing seeks to address millions of dollars of personal guaranty obligations, and to confirm a plan that will allow him to restructure an extensive real estate development business. A credit counseling agency could not provide the sophisticated level of advice necessary to achieve a restructuring of these affairs.

### III.
### CONCLUSION

Based upon the foregoing, the Debtor respectfully requests that the Court deem his post-petition attendance of a certified credit counseling course to satisfy the requirements of 11 U.S.C. Section 109(h).

DATED: June 15, 2009          Respectfully submitted,

**Sulmeyer**Kupetz
A Professional Corporation

By: _____
Victor A. Sahn
[Proposed] Attorneys for David Schwartzman, Debtor and Debtor in Possession

[MSH\BANKR\526745.1]

## DECLARATION OF DAVID SCHWARTZMAN

I, David Schwartzman, declare as follows:

1. I am a party in the above-entitled action. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2. I am generally in the business of developing and then selling off real estate projects. These projects are primarily situated in the State of California and are mostly located in Southern California. I develop single-family residential projects, apartment projects and condominium projects, and various commercial projects including self-storage space, retail space and office space.

3. My business has been damaged in its business by three different kinds of events that have occurred over the last year. First, my primary financial partner (or the financial partner of the development entity I control, which is known as DS Ventures, LLC), Lehman Brothers ("Lehman"), filed a Chapter 11 case in September, 2008 in the Southern District of New York. Lehman was a significant financial partner in the projects I was involved in and provided significant capital that funded the construction and/or development of these projects. Once Lehman filed its bankruptcy case, the funding for the these projects from Lehman ended. I and the various entities I control, were left to fund the various development costs and other items not included in the various construction loans on the real estate projects . This eventually created significant liquidity problems especially when weighed along with the other events described immediately below.

4. The second issue that confronted me in connection with my real estate projects was the downturn in the economy which has become familiar as reflected in the many recent Chapter 11 filings for real estate projects in Southern California. My projects have been negatively affected by these events which have made them more difficult to finance or refinance when the necessity to do so arose in certain instances. Further,

[MSH\BANKR\526745.1]    9

generally stated, there has been some decline in the value of these projects that has interfered with construction funding by construction financiers or has made it difficult to obtain construction funding on those projects which have been entitled for development.

5. The final issue which lead me to file this Chapter 11 case has been the actions of certain project lenders relating to breaches of their obligations to lend in accordance with their loan agreements. These lenders deny these allegations, however, I have retained counsel to investigate and commence litigation with regard to these claims. However, for purposes of explaining the third category of reasons behind his Chapter 11 filing, it has been the failure of certain of his lenders to meet their contractual obligations under their loan agreements. As a result, I have been unable to finish certain projects, and has had the loans called on those projects and has been pursued individually on my guarantees of these loans.

6. My intention, in filing my personal Chapter 11 case, was to address the significant liabilities that he has on account of guarantees that I issued to the construction lenders that were utilized on the various development projects. The quantifiable potential liabilities associated with my guarantees range between $37-$75 Million.

7. While the issues which created the need for me to seek bankruptcy protection are set forth in paragraphs 3 through 5 above, the final *event* which necessitated his Chapter 11 filing on an emergency basis was an action by Central Pacific Bank (one of the lenders against whom a lender liability action has been commenced) to attach my assets. At a hearing which occurred on May 28, 2009 in Los Angeles Superior Court, Central Pacific obtained a Writ of Attachment for over $11 Million against my assets, an attachment in a similar amount against my affiliate, and an attachment for approximately $3.5 Million against a trust who had issued a limited guarantee in favor of Central Pacific in regard to their loan(s) to various of the development entities that I control.

8.    I would have been paralyzed in terms of my ability to continue in business if the Writ of Attachment had been permitted on his cash and stock accounts as the funds from these accounts have been used to underwrite the development costs of my various projects. Accordingly, for this particular reason and for the reasons discussed above in general, this Chapter 11 case was filed.

9.    After the ruling of the Court was announced on Thursday, May 28, 2009 granting Central Pacific a writ of attachment against my assets, the assets of the Trust, and the assets of affiliated entity, I, various lawyers representing me, San Feliciano and other affiliates, dedicated all of our time to first, exploring a consensual standstill agreement with Central Pacific, and when those efforts failed, preparing to file bankruptcy petitions for San Feliciano and for me personally. I had always viewed bankruptcy as a last resort, and until the "eleventh hour" believed that it could be avoided.

10.    Once it was determined that I and San Feliciano (because of an immediately pending non-judicial foreclosure sale scheduled against the San Feliciano property) had no option but to file bankruptcy, I and my professionals started preparing for the bankruptcy filings. The bankruptcy preparations started and continued through the weekend that followed the entry of the writ of attachment orders. During that time, my focus was on identifying the information required to commence the bankruptcy cases, making arrangements to fund required retainers, determining which entities would need to file bankruptcy, and preparing a complete list of creditors for each of bankruptcy case.

11.    During the weekend preparations for filing for me and San Feliciano, I did not participate in any debt counseling courses. In the haste of preparations for the emergency filings for two cases, I was not advised that the debt counseling must be completed prior to the commencement of his individual case.

1    12.    On June 15, 2009, I successfully completed a debt counseling course with Start Fresh Instructional, LLC. Attached hereto as Exhibit 1 is a true and correct copy of the certificate demonstrating my completion of the course.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed June 16, 2009, at Los Angeles, California.

David Schwartzman

# EXHIBIT 1

Certificate Number: 03844-CAC-DE-007372604

Bankruptcy Case Number: 09-16565

# CERTIFICATE OF DEBTOR EDUCATION

I certify that on June 15, 2009, at 12:32 o'clock PM PDT,

David Schwartzman completed a course on personal financial

management given by internet by

Start Fresh Today Instructional, LLC,

a provider approved pursuant to 11 U.S.C. § 111 to provide an instructional course concerning

personal financial management in the Central District of California.

Date: June 15, 2009     By    /s/Ray Perez

                         Name  Ray Perez

                         Title Educator

**EXHIBIT 1 - 13**

| In re: | | CHAPTER: 11 |
|---|---|---|
| DAVID SCHWARTZMAN | | |
| | Debtor(s). | CASE NUMBER: 1:09-bk-16565-MT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406

A true and correct copy of the foregoing document described as **NOTICE OF MOTION AND MOTION TO APPROVE COMPLETION OF CREDIT COUNSELING COURSE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID SCHWARTZMAN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 17, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

U.S. Trustee, Katherine Bunker, Esq.     kate.bunker@usdoj.gov
Interested Party, Bernard Given, Esq.     bgiven@frandzel.com
Interested Party, Edward Kerns, Esq.     EdwardKerns@aol.com

☐ Service Information continued on attached page.

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On June 17, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Maureen A. Tighe
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite 325
Woodland Hills, CA 91367-6606

☒ Service Information continued on attached page.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 17, 2009 | Andrea Gonzalez | *[signature]* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009     **F 9013-3.1**

[VAS\GEN\526774.1]

| In re: | | CHAPTER: 11 |
|---|---|---|
| DAVID SCHWARTZMAN | | |
| | Debtor(s). | CASE NUMBER: 1:09-bk-16565-MT |

**ADDITIONAL SERVICE INFORMATION (if needed):**

**Attorneys for General Electric Capital Corporation**
Peter Gilhuly, Esq.
Latham & Watkins LLP
355 S Grand Ave
Los Angeles, CA 90071-1560

**CREDITORS**

American Express
P.O. Box 0001
Los Angeles, CA 90096-8000

Aon Risk Srvs, Inc. of So.Cal.InsSvc
Attn: Charlene Nakamura-Bond Dept
707 Wilshire Blvd., Ste. 6000
Los Angeles, CA 90017

Bank of America
P.O. Box 15026
Wilmington, DE 19850-5026

Bentley Financial Services
P.O. Box 60144
City Of Industry, CA 91716-0144

Capmark Finance, Inc.
Attn: Sheila Neumann
6955 Union Park Centre, Ste. 450
Midvale, UT 84047

Cathay Bank
Attn: Eddie Chang
9650 Flair Drive, 7th Fl.
El Monte, CA 91731

Central Pacific Bank
Attn: Curtis Chinn
220 South King Street
Honolulu, HI 96813

Comerica Bank
Attn: Steve Lekovsky
2000 Ave of the Stars, Ste. 210
Los Angeles, CA 90067

Countrywide Bank FSB
P.O. Box 10219
Van Nuys, CA 91410-0219

E & R Construction & Management, Inc
Mr. Richard Spunt, President
22011 Ventura Boulevard
Woodland Hills, CA 91364

E&R Construction and Management Inc
5825 W Sunset Boulevard
Los Angeles, CA 90028

East-West Bank
Attn: Jason Tsai
135 N. Los Robles Ave., 7th Fl.
Pasadena, CA 91101

Employment Development Department
Bankruptct Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Fidelity National Title Ins. Co.
Attn: Art Cheyne
1300 Dove St., 3rd Fl.
Newport Beach, CA 92660

[VAS\GEN\526774.1]This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

| In re:<br>DAVID SCHWARTZMAN<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 1:09-bk-16565-MT |
|---|---|

First Regional Bank
Attn: Deni Schultz
515 Flower Street, Ste. 1200
Los Angeles, CA 90071

Franchise Tax Board
Special Procedures
PO Box 2952
Sacramento, CA 95812-2952

Frandzel, Robbins, Bloom & Csato
Peter Csato/Thomas M. Robins
6500 Wilshire Blvd., 17th Fl.
Los Angeles, CA 90048

Attorneys for E&R Construction Management
John Gaims Esq.
1875 Century Park East 12th Floor
Los Angeles, CA 90067

GCRE III LLC
Attn: Tom McGarrity
1350 Avenue of the Americas
New York, NY 10019

GE Business Financial Services, Inc
Attn: Ingrid Carlino
500 W. Monroe Street
Chicago, IL 60661

Internal Revenue Service
Post Office Box 21126
Philadelphia, PA 19114

Jerry & Jon Monkarsh
9061 Santa Monica Blvd.
West Hollywood, CA 90069

Lehman Ali, Inc., a Del corp
c/o Robert Keane, Esq.
Paul, Hastings, Janofsky & Walker
515 South Flower St., 25th Fl.
Los Angeles, CA 90071

Lehman Brothers Holdings Inc.
399 Park Avenue, 8th Fl.
New York, NY 10022

Mercedes Benz Financial
P.O. Box 9001680
Louisville, KY 40290-1680

Noddle Surety & Ins Services Inc.
Attn: David Noddle
19507 Ventura Blvd.
Tarzana, CA 91356

Optical Communication Products, Inc
Attn: Controller
6101 Variel Avenue
Woodland Hills, CA 91367

Paul, Hastings, Janofsky & Walker
c/o Robert Keane
515 So. Flower St., 25th Fl.
Los Angeles, CA 90071

Preferred Bank
Attn: Anna Choi
3926 Grand Avenue, Suite E
Chino, CA 91710

US Bank
PVT Client Group-Los Angeles, CA
PO Box 790179
Saint Louis, MO 63179-0179

Ziegler Family Trust
Attn: Richard A. Corleto, Trustee
15760 Ventura Blvd., Ste. 801
Encino, CA 91436

[VAS\GEN\526774.1]This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**