1  Victor A. Sahn (CA Bar No. 97299)
       vsahn@sulmeyerlaw.com
2  Mark S. Horoupian (CA Bar No. 175373)
       mhoroupian@sulmeyerlaw.com
3  **SulmeyerKupetz**
   A Professional Corporation
4  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
5  Telephone:   213.626.2311
   Facsimile:   213.629.4520
6
   [Proposed] Attorneys for David Schwartzman,
7  Debtor and Debtor in Possession

8

9              **UNITED STATES BANKRUPTCY COURT**

10    **CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION**

11

12  In re                                  CASE NO. 1:09-bk-16565 MT

13                                         Chapter 11
    DAVID SCHWARTZMAN,
14                                         **NOTICE OF MOTION AND MOTION BY
                                           DEBTOR AND DEBTOR IN
15         Debtor in Possession.           POSSESSION FOR ORDER:
                                           (1) APPROVING DEBTOR'S ORDINARY
16                                         COURSE BUDGET 2) GRANTING
                                           RELATED RELIEF; MEMORANDUM OF
17                                         POINTS AND AUTHORITIES AND
                                           DECLARATION OF BRADLEY
18                                         WOOMER IN SUPPORT THEREOF**

19

20                                         **DATE:**   August 3, 2009
                                           **TIME:**   10:00 a.m.
21                                         **PLACE:**  Courtroom 302
                                                       21041 Burbank Boulevard
22                                                     Woodland Hills, CA  91367

23

24

25  / / /

26  / / /

27  / / /

28  / / /

[MSH\MTN\527417.1]                    - 1 -

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 4

II.   STATEMENT OF FACTS .................................................................................... 4

    A.    General Background ............................................................................... 4

    B.    Bankruptcy Filings and Causes ............................................................. 6

    C.    Management of DS/DMB Ventures......................................................... 7

    D.    Dissolving Member ................................................................................. 9

III.  THE BUDGET ..................................................................................................... 16

    A.    The Personal Expense Budget ............................................................... 17

    B.    The DS Budget ....................................................................................... 18

IV.   ARGUMENT ........................................................................................................ 20

    A.    The Court May Authorize the Use of Property of the Estate as
        Proposed Herein. .................................................................................... 20

    B.    Even if the Court Determines that the DS Budget Items are not
        Ordinary Course-The Court Can and Should Still Approve the Budget ..... 23

V.    CONCLUSION...................................................................................................... 24

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY

2  JUDGE, AND ALL INTERESTED PARTIES:

3

4         PLEASE TAKE NOTICE that on August 3, 2009 at 10:00 a.m., in

5  Courtroom 302 of the above-entitled Court located at 21041 Burbank Boulevard,

6  Woodland Hills, CA  91367, David Schwartzman, the Debtor and Debtor in Possession

7  (the "Debtor") herein, will and hereby does move this Court pursuant to 11 U.S.C.

8  § 363(b) for an order approving his proposed budget (the "Budget").  While the Debtor

9  submits that all of the items contained in the Budget are expenditures made in the

10  ordinary course of business, out of an abundance of caution, the Debtor seeks an order

11  of the Court approving his payment of the Budget items during the pendency of his

12  chapter 11 case.  As set forth in more detail herein, the Budget contains items that relate

13  not only to the Debtor's personal living expenses, but also contains business expenses

14  relating to DS Ventures, LLC, a California limited liability company ("DS").  The Debtor is

15  the majority shareholder and managing member of DS, which is in the business of real

16  estate development, mostly in the Southern California area.  As described in the Motion,

17  the Debtor's interest in DS is one of his most valuable assets, notwithstanding the

18  downturn in the real estate market.  For this reason, the Debtor has historically provided

19  the funding for DS's operations in the form of loans.  Currently, the cash flow needs of DS

20  require approximately $133,000 per month.  For the reasons presented herein, it is

21  critical to the Debtor's reorganization efforts that Mr. Schwartzman be permitted to

22  continue to not only fund his personal living expenses, for which their should be no

23  argument, but to continue to fund the operations of DS.

24         This Motion is made pursuant to 11 U.S.C. §§ 105 and 363(b) and (c), and

25  is based upon the attached Memorandum of Points and Authorities, the Declaration of

26  Bradley Woomer, and upon such further oral and documentary evidence as may be

27  presented to the Court in support of the Motion.

28  / / /

[MSH\MTN\527417.1]                                    - 2 -

1    **WHEREFORE**, the Debtor respectfully requests that the Court approve the

2    Budget, and authorize the Debtor to among other things, pay the expenditures listed in

3    the Budget, and continue his past practice of lending operating funds to DS, in the

4    ordinary course of his business.

5    **PLEASE TAKE FURTHER NOTICE** that objections, if any, shall be filed

6    with the Clerk of the above Court and a copy served upon **Sulmeyer**Kupetz, 333 S. Hope

7    Street, 35th Floor, Los Angeles, CA  90071-1406 and the Office of the United States

8    Trustee, 21051 Warner Center Lane, Suite 115, Woodland Hills, CA 91367, no later than

9    14 days prior to the scheduled hearing.

10    **PLEASE TAKE FURTHER NOTICE** that failure to file a timely response

11    may be deemed as consent to the relief requested in the Motion.  SEE LOCAL

12    BANKRUPTCY RULE 9013-1(a)(7) and (11).

13

14    DATED:  July 10, 2009                    Respectfully submitted,

15                                             **Sulmeyer**Kupetz
                                             A Professional Corporation
16

17

18    By: _____
                                             Victor A. Sahn
19                                           Mark S. Horoupian
                                             [Proposed] Attorneys for David Schwartzman,
20                                           Debtor and Debtor in Possession

21

22

23

24

25

26

27

28

[MSH\MTN\527417.1]                           - 3 -

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 | <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

3 | **I.**

4 | <u>**INTRODUCTION**</u>

5 | By this Budget Motion, the Debtor is seeking authorization to expend the

6 | sums found in the Budget attached hereto as Exhibit "1" as said expenditures constitute

7 | the normal and customary business expenses for DS and are considered customary

8 | expenses for any real estate development company with the level and sophistication of

9 | operations as those which are found in DS. Alternatively, to the extent that these

10 | expenditures are determined by the Court to be out of the ordinary course of business,

11 | the Debtor submits that he be permitted to continue to make said expenditures as the

12 | confer a benefit upon his bankruptcy estate (the "Estate").

13

14 | **II.**

15 | <u>**STATEMENT OF FACTS**</u>

16 | A.    <u>**General Background**</u>

17 | 1.    The Debtor filed a voluntary petition for relief under chapter 11 of the

18 | United States Bankruptcy Code on June 1, 2009 (the "Petition Date"). The Debtor is

19 | continuing in the operation and management of its business pursuant to Bankruptcy

20 | Code sections 1107 and 1108.

21 | 2.    The Debtor is the managing member and majority equity owner of

22 | DS Ventures, LLC, a California Limited Liability Company ("DS"). The Debtor owns 86%

23 | of DS.

24 | 3.    DS is engaged in the business of real estate investment and

25 | development, primarily in the Southern California region.

26 | 4.    The Debtor also holds all of the issued and outstanding shares in

27 | Patriot Homes, Inc.  Patriot was formerly engaged in the business of real estate

28 | investment, development, home construction and acted as the management entity for the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  various projects entities in which the Debtor was involved in developing.  The majority of

2  the projects in which Patriot was involved were single-family home tracts projects located

3  in and around Fresno, California.

4         5.     Patriot is no longer actively engaged in business or operational.

5  However, Patriot still exists from as a legal entity and will file a tax return for 2008.  As of

6  June 15, 2009, Patriot no longer had any employees.

7         6.     Patriot wound down its business operations because of the declining

8  California real estate market combined with the fact that the projects in Fresno and

9  Clovis, California in which it was involved had been completed.  No new projects were

10  commenced that required the involvement of Patriot.

11         7.     Lakeside Capital Partners, LLC, a Delaware limited liability company

12  ("Lakeside") acted as a consultant and money manager for Lehman Brothers and

13  associated entities ("Lehman").  The projects in which Lehman was involved with DS

14  involved Lakeside.

15         8.     Bryan Troxler through his affiliated and related entities ("Troxler")

16  also acted as a consultant and money manager for Lehman.

17         9.     DMB Ventures, LLC, a California limited liability company ("DMB")

18  was formed to hold the membership interests in the seven residential real estate

19  development projects in which Troxler was involved in Fresno and Clovis, California.

20  These were and are real estate entitlement transactions.  Properties would be purchased,

21  entitled for the construction of improvements and then sold.

22        10.     San Feliciano Holding Company LLC, a Delaware limited liability

23  company ("San Feliciano") is the owner that certain real property commonly known as

24  22255 Mulholland Drive, Woodland Hills, California (the "San Feliciano Property").  The

25  San Feliciano Property consists of approximately 8.8 acres of land and entitlements have

26  been sought construct approximately 23 homes which when completes are expected to

27  sell for an average price of approximately $800,000.

28        11.     DS has an undivided fifty percent (50%) interest in San Feliciano.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

B.      **Bankruptcy Filings and Causes**

1.      On June 1, 2009, the Debtor filed a petition under chapter 11 of the U.S. Bankruptcy Code as Case Number 1:09-bk-16565, which case is pending before this Court.

2.      On June 1, 2009, San Feliciano filed a petition under chapter 11 of the U.S. Bankruptcy Code as Case Number 1:09-bk-16563 which case is pending before this Court (the "San Feliciano Bankruptcy").

3.      The San Feliciano Bankruptcy was necessitated, in part, by the fact that the lender on the San Feliciano Property, Central Pacific Bank ("Central Pacific"), commenced a pending non-judicial foreclosure proceeding on this Property.

4.      Central Pacific is the lender under three projects in which DS or DMB have an interest.  These loans were personally guaranteed to various extents by the Debtor.  Central Pacific commenced an action in California state court to enforce these guarantees.  In connection with this action Central Pacific sought and was granted a prejudgment writ of attachment against the Debtor, and other non-debtor parties.  The precipitated the filing of the Debtor's bankruptcy case.

5.      Various financial concerns and conditions led to the filing of the Debtor's and San Feliciano bankruptcies.  These include, but are not limited to, the following:

    a.      The Writ of Attachment obtained by Central Pacific;

    b.      The non-judicial foreclosure proceeding commenced by Central Pacific relating to the San Feliciano Property;

    c.      The financial collapse of Lehman which was the primary source of equity for DS and DMB on approximately twenty (20) projects.  The collapse resulted in Lehman's utter failure to honors its capital funding commitments which were substantial.  The problems with Lehman's funding initially began in the Spring of 2008.  Thereafter, Lehman's funding performance worsened and was followed by its ultimate collapse and bankruptcy.  Pursuant to the agreement of DS and DMB with Lehman,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Lehman was to fund ninety percent (90%) of the capital needs for each project with DS or

2  DS or DMB, as applicable, funding the remaining ten percent (10%).  Thus, based upon

3  his guarantees to various lenders and his interests in DS and DMB, the Debtor was

4  required to personally fund the necessary capital for the projects.  Lehman's decline and

5  ultimate financial collapse was the single most important factor in the decline of the

6  various entities in which the Debtor (and DS and DMB) was involved, even more so than

7  the in the decline in the California real estate market and the constriction of the capital

8  markets;

9          d.      The general decline of the real estate markets in Southern

10 and Central California; and

11          e.      The virtual freeze of the capital markets in the throughout

12 California, the United States and the world.

13      **C.      Management of DS/DMB Ventures**

14          1.      Managing Member: The Debtor is the majority interest-holder and

15 the Managing Member of DS and DMB.  He has more than 18 years of real estate

16 experience.  He began his real estate development career in California in 1990 with the

17 acquisition and entitlement of land and the construction of single family homes.  In 1993,

18 the Debtor founded Patriot.  Patriot and its related and affiliated entities operated a

19 dynamic real estate development business which successfully acquired, entitled, and

20 permitted properties on which it constructed thousands of single-family homes,

21 condominiums and planned unit developments ("PUDs").  In 1999, the Debtor founded

22 DS to concentrate on land acquisition and entitlement projects, as well as, the acquisition

23 and development of residential and commercial real property in Central and Southern

24 California.  To date DS has acquired developed and/or improved several hundred million

25 of dollars worth of real estate.  Presently, DS and DMB owns or controls over 1,500 lots

26 and units located throughout Central and Southern California in the counties of Santa

27 Barbara, Los Angeles, Fresno and Kern.

28 / / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1          2.      <u>CFO/COO</u>:  Bradley Woomer has been with Patriot and DS since

2   1997 initially as the Chief Financial Officer and later as the Chief Operating Officer.  Mr.

3   Woomer's duties and qualifications are described at length in his attached declaration.

4          3.      <u>General Counsel</u>:  James D. Hearn ("Hearn") is an attorney with

5   approximately twenty-five years of real estate experience.  Prior to joining DS as its

6   general counsel in August 2007 Hearn was a partner in the Encino law firm of Corleto,

7   Ackerman & Hearn, LLP where his practice focused on tax, corporate, real estate, trust &

8   estate planning and healthcare law.  Hearn has been published in various legal

9   publications, lectures on various bioethical topics, and is a professor of health care ethics

10   at the California State University, Northridge.  Hearn received his law degree from the

11   University of Southern California and holds dual Master of Law degrees in Taxation from

12   the University of San Diego and Alternative Dispute Resolution from the Straus Institute

13   at the Pepperdine School of Law.  In addition, he holds Master Degrees in Church History

14   from Fuller Theological Seminary and Bioethics from the University of Loyola – Chicago

15   Strick School of Medicine.

16          4.      <u>Head of Construction and Planning</u>:  Marc Annotti ("Annotti") has

17   been with Patriot and DS since 1998 and has over 25 years of real estate experience.  In

18   addition to being a licensed General Engineer and General Contractor Annotti has

19   extensive experience in land use and entitlement.  His responsibilities include strategic

20   and advance planning, development processing and representing DS with public officials

21   and city representatives, as well as, working closely with engineers and architects on

22   project design and construction.  Annotti holds a Bachelor of Arts degree from the

23   University of California at Los Angeles.

24          5.      <u>Project Manager</u>:  Mitch Canada ("Canada") has over 20 years of

25   real estate construction experience and has been responsible for the development of

26   over 3,000 residential units in Southern California.  Prior to joining DS in 2003, Canada

27   acted as a consultant with Simon & Sons Realty Group, where he was responsible for the

28   disposition of underperforming real estate portfolios.  Additionally, for the last seven

1 years, Canada has been a contributing member of IBICOS (a joint venture between the

2 Department of Energy and the building industry) where he has been instrumental in

3 evaluating new building technologies presented by entities such as MIT and G.E.

4 Plastics.  Canada holds a Bachelor of Science from the University of Utah.

5      D.    **Dissolving Member**

6      1.    DS and Lakeside are the members of LB/L-DS Ventures, LLC

7 ("Master 1").  Master 1 owns controls the projects described below as Fresno, Clovis,

8 Playa, Bakersfield, Lompoc Apartment and Mini-Storage and Lompoc II.

9      2.    DS and Lakeside were also the members of LB/L-DS Ventures II

10 Master, LLC ("Master 2").  Master 2 owns controls the projects described below as

11 Metropolitan, San Feliciano, and Caheunga.

12      3.    DS and Lakeside were also the members of LB/L III-DS Ventures IV

13 Master, LLC ("Master 4").  Master 4 owns the project described below as Sherman Way.

14      4.    DS was the operating member of Master 1, Master 2 and Master 4,

15 the operation of which is governed by those certain Operating Agreement entered into as

16 of April 29, 1999, November 2001 and July 14, 2006, respectively, and as amended (the

17 "Agreements").  Lakeside is the other member in these entities.  Lakeside previously

18 acted as the managing member for Master 1, Master 2 and Master 4.

19      5.    Lakeside had certain capital funding obligations with regard to the

20 projects and properties owned by and through Master 1, Master 2 and Master 4 which it

21 failed to honor. DS gave Lakeside notice of the defaults which Lakeside failed to cure.

22      6.    Under the Agreements, in the event of a default by a member (in this

23 case Lakeside) the non-defaulting member (in this case DS) can make the election to

24 dissolve the entity.  DS made this election.  The non-defaulting member, in the event of

25 such election, becomes the liquidating member.  Thus, upon making the liquidating

26 member DS became the liquidating member with the right to oversee the winding up of

27 Master 1, Master 2 and Master 4.  This is what DS is primarily devoting its attention to

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   accomplishing at this time.  As the liquidating member DS has authority to execute all

2   documents on behalf of Master 1, Master 2 and Master 4.

3          7.    Current Projects:  The illiquid real estate market and the current state

4   of the capital markets make real estate development especially challenging. One

5   traditional exit strategy was to sell the entitled property to another builder.  This avenue is

6   currently rarely available which necessitates that DS develop and build out of its projects.

7   Many, if not all, of DS's projects involved complicated entitlement issues or are otherwise

8   politically sensitive.  DS's area of expertise is in dealing with such projects.  Thus, DS,

9   and its staff's personal involvement in the projects is central to the maximization of their

10  value.  DS and its staff has extensive experience in dealing with the governmental and

11  other entities involved in the entitlement and permitting process.   The projects currently

12  under development by the Debtor, his management team and business entities include

13  the following:

14          a.    The Metropolitan:  The property is located in Hollywood on

15  Sunset Boulevard, just west of the 101 Freeway, and was previously operated as a 12-

16  story hotel with 25,000 square feet of two-story retail.  Since the acquisition of the

17  property in 2005, DS has entitled the property for redevelopment as a 52-unit market rate

18  apartment building, 40,000 square feet of creative office space, 79 apartment units (to be

19  located on the adjacent lot) and obtained the right to erect two supergraphic signs on the

20  apartment building (one to face eastward toward the 101 Freeway and the other to face

21  west on Sunset Boulevard).  Additionally, the adjacent 79-unit apartment project will

22  possess roof signage.  The project design required DS to obtain approval from the City to

23  transfer the allowable floor area between the two separate parcels, as well as to obtain

24  approval from the CRA for the wall-graphic signage.  The approvals for the zone change

25  to C2-2D-SN and two tentative maps for the Property were approved by the City Planning

26  Commission on July 13, 2006, the Los Angeles City Council on December 13, 2006 and

27  the Mayor on December 29, 2006, constituting final approval.  DS has completed

28  construction on, and obtained a certificate of occupancy for, the apartment tower and is

[MSH\MTN\527417.1]                                    - 10 -

1   overseeing its lease-up.  DS is also completing the negotiation of the agreements

2   necessary to the erection of the signage.  The value of such signage could be an amount

3   equal to the price paid for the Property.  GE Commercial Capital ("GE") is the lender on

4   the Property and failed to honor its obligation to fund pursuant to the terms of the loan.

5   This has led to the filing of numerous liens on the property and the filing of more than 25

6   lawsuits to foreclose such liens.  GE has also recorded a Notice of Default against the

7   property commencing its non-judicial foreclosure action.  DS has responded to and is

8   funding such litigation, and has brought a claim against GE based, in part, on a lender

9   liability cause of action.  DS is managing such litigation, overseeing the lease up of the

10  Property and considering its options regarding the best course to preserve and maximize

11  the value of the Property.

12          b.      Fountain & Wilcox:  DS controlled that certain 1.27 acre site

13  located at 1277 Wilcox Avenue, Los Angeles, California.  The project was designed for

14  34 single family units under the new Small Lot Subdivision Ordinance.  The project

15  required the preservation of a historic structure located on the site which was donated to

16  the Hollywood Community Housing Corporation.  This project has been sold.  As a part of

17  the purchase price, DS received a $100,000 equity interest in the project and an

18  unsecured promissory note executed by the purchaser in the amount of $1,000,000.  In

19  order to increase the likelihood of DS being paid on said note, DS is working to assist the

20  current owner and its development team in its dealing with the City and the various

21  historical preservation entities.

22          c.      Sports Authority:  DS acquired the existing 97,600 square

23  foot, three-story mixed-use building located at the corner of Sepulveda Boulevard and

24  Missouri Avenue in Los Angeles, California.  The property is currently 100% occupied by

25  a Sports Authority store on the ground floor (comprising 31,600 square feet) and by

26  Westwood Self Storage on the second and third floors (comprising 66,000 square feet).

27  The master lease on the mini-storage is currently substantially below market with

28  approximately 15 months remaining on the lease.  DS is currently in discussions to

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  terminate the current master lease on the mini-storage and re-lease the space at market

2  rates.  The Sports Authority lease is also currently substantially below market and

3  terminates in approximately seven years.  DS is investigating a revenue sharing clause in

4  the lease which is based on a base-line dollar amount set many years ago.  DS believes

5  that this could result in substantial additional revenue under this lease. The property is

6  also eligible for advertising signage relating to any products or manufacturers which sell

7  products at the Sports Authority (*i.e.*, Nike, Reebok).  There is currently potential for two

8  such signs.  DS is working to maximize revenues obtained from this property.

9          d.      St. Luke's Medical Center:  DS in partnership with Lehman

10  acquired the former St. Luke Medical Center located at Washington Boulevard and

11  Altadena Drive in Pasadena, California.  The property consists of 13.4 acres on which is

12  currently located a 130,000 square foot hospital building, two office buildings, seven

13  single family dwellings and a ten-acre surfaced parking lot.  DS has worked to obtain a

14  Conditional Use Permit ("CUP") to convert the hospital portion of the Property to an

15  Assisted Living Facility and to lease-up the two existing office buildings and receive

16  approval for an additional three office buildings totaling 100,000 square feet.  DS has also

17  explored the construction of 160 age-restricted apartment units.  Lehman held the debt

18  on the project which it pledged as collateral; such collateral was executed upon by its

19  creditors, and the loan is now overseen by a receiver.  DS has been actively working with

20  the receiver to manage the Property and to maximize its value.

21          e.      Cahuenga:  DS purchased this 6.97 acre site located at 2775

22  Cahuenga Boulevard in Hollywood, California in partnership with Lehman.  The site has

23  been rezoned for 75 market-rate apartment units and a tentative map has been

24  approved.  DS intends to move the project on to the construction phase by either self-

25  funding or the use of outside equity.  Because the current state of the real estate and

26  capital markets the only exit strategy is to build out of the Project.  Thus, DS is

27  negotiating with various non-traditional funding source to obtain the funds necessary to

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  undertake the construction of the Project through outside equity or self funding to

2  construct apartment.

3            f.        San Feliciano:  DS and Lehman purchased this 8.8 acre site

4  located at 22255 Mulholland Drive (east of the San Feliciano Drive/Mulholland Drive

5  intersection), Woodland Hills, California in December 2006.  DS designed this project to

6  adapt hillside development and in compliance with the guidelines and restrictions of the

7  Mulholland Specific Plan.  It was also require that the design be created to save and

8  preserve over 100 oak trees located on the site.  DS is completing the entitlement

9  process for the construction of 23 single family homes of the Property.  The lender on the

10  property is Central Pacific who commenced a non-judicial foreclosure proceeding against

11  the Property which was placed into bankruptcy on June 1, 2009.  DS is currently

12  supervising and managing the bankruptcy proceeding and the litigation brought against

13  Central Pacific based, in part, on its act and omissions relating to this Property and the

14  loan secured by it.

15            g.        Sherman Way:   DS in partnership with Lehman acquired this

16  2.18 acre site located at 14717 Sherman Way, Van Nuys, California east of the Kester

17  Avenue/Sherman Way intersection.  The project is designed for sixty three  detached row

18  homes under the Small Lot Subdivision Ordinance.  The application for a tentative tract

19  map was approved by the Planning Advisory Agency on May 11, 2007.  DS is exploring

20  its opportunities with regard to this Property and current intends to construct either the

21  row homes or apartments on the Property.

22            h.        Playa Del Rey:  DS in partnership with Lehman acquired this

23  property from the Howard Hughes Corporation in May 2002.  The site is located at 63rd

24  Avenue and Esplanade Street in Playa Del Rey, California and fronts the Ballona Lagoon

25  providing ocean views.  Presently DS is in a lawsuit with the City of Los Angeles

26  regarding the unauthorized down-zoning of the property.  DS is dealing with this litigation

27  and is engaged in ongoing settlement negotiations regarding this matter all in an effort to

28  maximize the recovery on this property.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1           i.      <u>Highland Mixed Use</u>: DS in partnership with Lehman acquired

2  this parcel located south of Sunset Boulevard on Highland Avenue in the Hollywood

3  section of Los Angeles in November 2005. DS entitled the property for 65 residential

4  units and 7,000 square feet of ground floor commercial space. The property was in

5  March 2006. However, pursuant to the terms of such sale DS retained the interest in the

6  commercial space which Lennar is required to build out and deliver the ground floor

7  space to a shell and return it to the DS at no cost.

8           j.      <u>Clovis</u>: DS was completing the build out of eighty-nine single

9  family homes in Clovis, CA. The first phase of this project was entitled and sold by DS.

10  The lender on this Property is Central Pacific which has commenced an action for judicial

11  foreclosure against the Property. DS is exploring its options with regard to this Property

12  and also have litigation pending against Central Pacific relating to its acts and omissions

13  with regard to this loan.

14           k.      <u>Fresno/Bakersfield</u>: DS owns these properties in partnership

15  with Lehman and is currently completing the construction of the nine remaining homes

16  and the remaining site improvements on the Fresno property. On the Bakersfield

17  property DS is seeking to sell the eleven remaining finished lots to satisfy the loan

18  secured by the Property.

19           l.      <u>Lompoc Mini-Storage and Apartments</u>: DS has commenced

20  construction of a 72,000 square foot mini storage facility and a 64-unit apartment building

21  in Lompoc, Santa Barbara County, California. The intent is to complete the construction,

22  lease up and stabilize the properties and then sell them. This is expected to be a three-

23  year process.

24           m.      <u>Lompoc II</u>: This 40-acre site is located at the corner of North

25  Avenue and Bailey Avenue in Lompoc, Santa Barbara County, California. The site is

26  currently zoned AG-II-100 for agricultural uses. DS is currently processing the

27  annexation, zone change and general plan amendment applications to allow for

28  approximately 300 single family home lots (ten residential units per acre) and 100

1  apartment units.  It is estimated the tentative map will be approved in 2009 or 2010.

2  Upon approval DS will either develop the homes or sell the land to a large public or

3  private builder and build the apartment units.

4      n.  Riverfront:  DS in partnership with Lehman own this sixty-six

5  acre site located at the northwest corner of Josephine Avenue and Riverside Country

6  Club Drive in Fresno, California. The project, adjacent to the San Joaquin River, required

7  a design that preserved a federally endangered species and provided protection to a

8  riparian habitat.  DS split the parcels under two tentative tract maps and received

9  approval from the Planning Commission for a zone change to R1 and a tentative map on

10 approximately 52 acres for 230 single family lots on November 16, 2005.  The remaining

11 acreage is currently awaiting a general plan amendment review and approval.  Upon final

12 approval the project will consist of 230 single family lots and 180+ garden apartment units

13 and 200,000 square feet of Class A industrial space.  The lender on this property is also

14 Central Pacific which instituted a non-judicial foreclosure proceeding against this

15 Property.  The sale of the Property is currently scheduled for July 15, 2009.  A

16 continuance of this sale was requested of Central Pacific, which request was denied.  It is

17 anticipated that the project will be placed in bankruptcy to protect its value.

18      o.  McKinley IV, V & VI:  This projected is owned with  Lehman

19 Brothers through DMB.  The projects are located in Fresno, west of the 99 Freeway and

20 comprise an assemblage of 107 acres that will yield approximately 450 single family

21 homes.  Tentative maps have been approved and the properties are currently being

22 annexed into the City of Fresno for development purposes.

23      p.  113 North San Vicente:  DS acquired an undivided one-half

24 tenancy-in-common interest in that certain 16,000 square foot office building located at

25 113 North San Vicente Boulevard, Beverly Hills, California in March, 2008.  The property

26 consists of two floors of office space and two floors of parking space located on the

27 ground floor and one level of subterranean parking.

28 / / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    q.    <u>Variel</u>:  DS purchased this property located in the Warner

2 Center section of Woodland Hills in January 2008.  The property consists of 147,000

3 square feet: 102,500 square feet of office space and 45,400 square feet of 22'-24' clear-

4 height warehouse space.  DS is currently acting as the property manager for the Property

5 and attempting to lease up the Property and exploring other income generating uses for

6 the Property (*i.e.*, use for film production).

7                                         III.

8                              **THE BUDGET**

9    The Budget, attached hereto as Exhibit 1, represents the expenditures that

10 the Debtor projects that he must make to (a) pay for personal living expenses; and

11 (b) fund the operations of DS, while DS completes its role as the liquidating member of

12 the projects listed in Section II.D above, and/or manages the completed or partially

13 completed projects.  As described herein, the continuation of DS's business operations is

14 critical to the preservation of the Debtor's equity and ownership interests in the DS

15 projects, which will ultimately provide the basis for the Debtor to propose a plan of

16 reorganization in his case.  The attention and expertise that DS provides will also limit the

17 exposure that the Debtor has on his various personal guarantees of the loans secured by

18 the projects, which also confers a direct benefit on the Debtor's estate as this will either

19 eliminate or minimize the claims that the lending institutions will have against the Debtor.

20 The Debtor included a similar budget in the Debtor's "7-Day Package" provided to the

21 Office of the United States Trustee (the "Original Budget").  The Budget attached hereto

22 is a modified version of the Original Budget, which among other things, eliminates the

23 salary being paid to the Debtor, and accounts for the elimination of the expense

24 associated with one leased vehicle, for which the last payment was made in July.   The

25 Debtor requests that the Budget be approved for a period of at least 180 days, without

26 prejudice to the Debtor seeking a further extension and/or modification of the Budget.

27 The Budget is broken down into two categories—personal expenses of the Debtor (the

28

1  "Personal Expense Budget"), and the business expenses of DS (the "DS Budget").  Each

2  category is described with more particularity below:

3      A.    **The Personal Expense Budget**

4          The Debtor's personal living expenses are listed with particularity in the

5  Budget.  The Debtor's total monthly living expenses on a going-forward basis are

6  $39,743.91.

7          1.    Mortgage:  The most significant expenditure are the mortgage

8  payments that the Debtor is required to make, and which are secured by deeds of trust

9  against the Debtor's residence.  Between the first mortgage, and the two junior

10  mortgages, the Debtor's total monthly payments are $22,222.08 per month.  The total

11  encumbrances are approximately $3,170,000, and the Debtor believes that the residence

12  has a current fair market value of approximately $6,500,000.  The encumbrances include

13  a $2,238,288 first deed of trust held by Countrywide (now Bank of America); and second

14  and third deeds of trust totaling $932,500 in favor of Jerry and Jon Monkarsh (the

15  "Monkarsh Loans").  The Monkarsh Loans were borrowed by the Debtor, but the funds

16  were used entirely in the Debtor's business.  In short, only the Countrywide/Bank of

17  America indebtedness constitutes purchase money debt on the property.  In order to

18  protect the value for the Estate of this important asset (which has approximately $3.3

19  million in equity), it is imperative that the Debtor be permitted to service the loans secured

20  by the residence.  Failure to pay the mortgages would result in the accumulation of

21  interest, attorneys' fees and penalties, at best, and foreclosure at worst.

22          2.    Property Maintenance and Related Items:  In addition to the

23  mortgages described above, the Debtor must pay ordinary and customary maintenance

24  items associated with the home, including electricity, water, utilities, pool and yard

25  maintenance, housekeeping, etc.  The total amount of these expenses is $3,180, which

26  the Debtor submits that these expenses are reasonable, necessary, and customary for

27  the maintenance of the Debtor's residence.

28  / / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1          3.      <u>Auto Expenses</u>:  The Debtor leases one vehicle and owns another

2 vehicle.  The total automobile payments, not including insurance, are approximately

3 $6,850 per month.  The Debtor believes that one vehicle that is owed, and against which

4 there is a secured claim has equity of approximately $65,000.  Thus, as with the

5 residence, it is important for the Debtor to continue to service the loan to protect the value

6 of this asset.  As stated above, the lease for one vehicle expires at the end of July, and

7 will be returned.  Accordingly, on a going-forward basis the cost of this vehicle will be

8 eliminated.

9          4. ·     <u>Other Expenses</u>:  In addition to the foregoing, the Debtor has

10 budgeted customary and ordinary course expenditures such as food, entertainment,

11 insurance (medical, dental, automobile, residential, umbrella), taxes not deducted from

12 mortgage payments (property taxes), clothing and dry cleaning.

13          As these expenses are ordinary course expenditures, as discussed below,

14 the Bankruptcy Code specifically authorizes the Debtor to continue to make them

15 notwithstanding his bankruptcy filing.

16    **B.**    **The DS Budget**

17          As described in great detail above, the cornerstone of the Debtor's

18 restructuring efforts will come from the completion and sale of the various and substantial

19 real estate projects of DS, in which the Debtor is the managing member, and the majority

20 equity holder.  In order to protect and foster the considerable investments and equity the

21 Debtor believes exist in these projects, notwithstanding the havoc wrought upon them by

22 Lehman's demise and refusal to abide by its contractual obligation to fund, DS must

23 continue to operate.  In particular the people that make up DS's workforce, must continue

24 to seek out alternative, non-traditional funding or equity sources, negotiate with lenders,

25 develop plans for projects, address legal, zoning, entitlement and planning issues, and

26 otherwise manage the existing projects.  Of course, in order to maintain the operations,

27 the workforce (which has already been trimmed back significantly), must be paid.  While

28 the projects are effectively frozen while alternative funding is sought out, DS has

1   required, and will continue to require capital infusions from the Debtor.  The total

2   expenditures of DS amount to approximately $133,000 per month.

3          1.   <u>DS Salaries</u>:  Approximately $52,600 of the DS Budget constitutes

4   salaries of DS's staff of highly trained professionals.  The Original Budget submitted with

5   the 7-Day package had a significantly higher amount budgeted because it included a

6   salary of $50,000 to the Debtor, which has been eliminated ($25,000 was paid).  Further,

7   the salary amount listed for the Debtor's CFO of $7,000 a month has been eliminated,

8   and the duties of the CFO have been assumed by Mr. Woomer.  The remaining salaries

9   include those of chief operating officer, Bradley Woomer, general counsel, James Hearn,

10  head of construction and planning, Mark Annotti, project manager, Mitch Canada,

11  bookkeeping/accounting, and office manager/administrative assistant.  Each of these

12  individuals is critical to the continued operation of DS.  The Debtor submits that the

13  salaries are all reasonable given the levels of expertise and experience DS's staff

14  provides.

15         2.   <u>Other Expenses</u>:  In addition to the salary expenses, the DS Budget

16  includes ordinary operating expenses such as utilities, phone, internet, copying, offices

17  supplies, and insurance (workman's compensation, liability, property and office).  In

18  addition, DS employs outside counsel to represent it in legal proceedings, outside

19  accountants to provide tax preparation services.  The attorneys hired directly by DS

20  represent DS is all non-bankruptcy legal proceedings and litigation, including litigation

21  regarding the Metropolitan projects, and the project in which Central Pacific Bank is the

22  lender.  DS also pays outside consultants approximately $10,000 per month to provide

23  construction and engineering expertise where needed.

24         3.   <u>Interest Expense</u>:  In addition to the above expenses, DS pays

25  approximately $13,671 per month in interest expense on three loans.  The payment to

26  US Bank for $824 is an interest only payment for a $225,000 loan that is secured by a

27  $250,000 CD provided by the Debtor as collateral.  The US Bank for $6,947 is amortizing

28  loan that will be repaid in approximately sixteen months and is secured by one of the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

[MSH\MTN\527417.1]

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Debtor's money market accounts for $140,000.  Finally, the Playa Del Rey loan payment,

2  Playa del Rey payment is for a land loan with Cathay Bank with an outstanding balance

3  of $1,156,598.  The payments are interest only payments at 5.75%-with the loan

4  maturing on August 7, 2009.  As described in Section II.D.7.h above, the property is

5  owned by Master 1.

6  IV.

7  **ARGUMENT**

8  A.    **The Court May Authorize the Use of Property of the Estate as**

9  **Proposed Herein.**

10  Pursuant to Bankruptcy Code section 541, upon the commencement of a

11  case under chapter 11, an estate is created which includes all legal and equitable interest

12  of the debtor in property at the commencement of the case.  The Debtor, after notice and

13  hearing, may use, sell or lease property of the Estate (Bankruptcy Code section 363(b)).

14  Even though the expenditures are an ordinary element of Debtor's business operations,

15  the Debtor seeks Court approval of the Budget out of an abundance of caution.

16  Bankruptcy Code section 1107 places a debtor in possession in the shoes

17  of a trustee in every way.  Thus, a debtor in possession — such as the Debtor herein —

18  is the functional equivalent of a chapter 11 Trustee.  *In re Softwaire Centre Int'l, Inc.*, 994

19  F.2d 682 (9th Cir. 1993).

20  Bankruptcy Code section 1108 provides that "[u]nless the court, on request

21  of a party in interest and after notice and a hearing, orders otherwise, the trustee may

22  operate the debtor's business."

23  The Legislative History to Bankruptcy Code section 1108 states that "in a

24  reorganization case, operation of the business will be the rule, and it will not be

25  necessary to go to the court to obtain an order authorizing operation."  (House Report No.

26  95-595, 95th Cong., 1st Sess. 404 (1977); Senate Report No. 95-989, 95th Cong., 2d

27  Sess. 116 (1978)].)

28  Bankruptcy Code section 363(c)(1) provides that:

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    If the business of the debtor is authorized to be operated
2    under section 721, 1108, 1203, 1204 or 1304 of this title and
     unless the court orders otherwise, the trustee may enter into
3    transactions, including the sale or lease of property of the
     estate, in the ordinary course of business, without notice or a
     hearing, and may use property of the estate in the ordinary
4    course of business without notice or a hearing.

5    Courts have adopted a test for determining whether a transaction is in the

6    ordinary course of business, "a horizontal dimension test and a vertical dimension test."

7    In re Dant & Russell, Inc., 853 F2d 700, 704 (9th Cir 1988); In re Roth American, Inc.,

8    975 F.2d 949 (3d Cir. 1992); and In re James A. Phillips, Inc., 29 B.R. 391 (Bankr.

9    S.D.N.Y. 1983).

10        1.    The Horizontal Dimension Test.

11        The inquiry deemed horizontal is whether, from an industry-wide

12    perspective, the transaction is of the sort commonly undertaken by companies in that

13    industry. In re Roth at 953.

14        Here, satisfaction of the horizontal test is met as to both the Personal

15    Expense Budget and DS Budget. As to the Personal Expense Budget, the expenses

16    listed therein are commensurate with those of an individual who has achieved the type of

17    success that the Debtor has achieved. There are no extraordinary, unusual, or

18    unexpected expense categories or amounts. With respect to the DS Budget, said

19    expenditures constitute the normal and customary business expenses for DS and are

20    considered customary expenses for any real estate development company with the level

21    and sophistication of operations as those which are found in DS. The Debtor has been in

22    the business of real estate development since 1993. As he built Patriot Homes and then,

23    DS, since the founding of each company, the categories of expenses set forth in the

24    Budget represent typical categories of expenses incurred by a real estate development

25    company of the size and project-type as those which are found in the development

26    portfolio of DS. The Debtor postures that this is not an uncommon practice for limited

27    liability companies engaged primarily in real estate development to receive funding from

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  its managing member while projects are developed, and until capital events occur such

2  as a sale or investment by a third party in a project.

3          2.      The Vertical Dimension Test.

4          The inquiry deemed vertical (more appropriately characterized as the

5  creditor's expectation test) analyzes the transactions "'from the vantage point of a

6  hypothetical creditor and whether the transaction subjects a creditor to economic risk of a

7  nature different from those he accepted when he decided to extend credit.'" In re Roth at

8  953.  So long as the transactions conducted are consistent with these expectations,

9  creditors have no right to notice and hearing, because their objections to such

10  transactions are likely to relate to the bankrupt's chapter 11 status, not the particular

11  transactions themselves.  Where the debtor in possession is merely exercising the

12  privileges of its chapter 11 status, which include the right to operate the bankrupt

13  business, there is no general right to notice and hearing concerning particular

14  transactions.  In re James A. Phillips, Inc. at 394.

15          Here, satisfaction of the vertical test has been met as to both the Personal

16  Expense Budget and DS Budget.  With respect to the Personal Expense Budget, a

17  hypothetical or actual creditor of the Debtor would be hard pressed to argue that they

18  would expect the Debtor to not have a mortgage, property taxes, utilities, car payments,

19  and maintenance expenses.  Furthermore, given that almost 90% of the $60 million of

20  unsecured debt listed by the Debtor in his schedules is held by financial institutions who

21  lent to certain DS entities, and hold personal guarantees by the Debtor, it is implausible

22  that such creditors would not expect that DS would require funding from its managing

23  member, the Debtor, to maintain operations.  Each of the lenders holding these claims

24  against the Debtor were obviously aware that the Debtor was in the real estate

25  development and management business, as the loans were primarily made to a DS-

26  controlled entity for the specific purpose of acquiring and developing specific parcels of

27  real estate.  Where the Debtor is the majority equity holder, and managing member of

28  DS, and where even in an economy where real estate lending was accessible, it is

[MSH\MTN\527417.1]                              - 22 -

1   beyond question that DS would not have regular sources of income while projects are

2   being developed.  It is typical and customary for the operational expenses of such

3   business to be funded by their principals pending the capital events such as a sale of a

4   project.  Based upon the foregoing, the Debtor submits that vertical dimension test is also

5   satisfied as to the DS Budget.

6       **B.**    **Even if the Court Determines that the DS Budget Items are not**

7   **Ordinary Course-The Court Can and Should Still Approve the Budget**

8           Even if the Court determines that the DS Budget does not include

9   transactions that are in the "ordinary course", the Court should still approve the proposed

10  transactions.  Section 363(b)(1) of the Bankruptcy Code provides that a trustee (or in this

11  case a debtor in possession) "after notice and a hearing, may use, sell or lease, other

12  than in the ordinary course of business, property of the estate."  A transaction outside the

13  ordinary course of business may be approved "if the debtor proves it is justified by a

14  sound business purpose."  In re North American Royalties, Inc, 276 BR 587, 593 (Bankr

15  ED Tenn 2002); In re North American Royalties,Inc, 276 BR 860, 862–863 (Bankr ED

16  Tenn 2002).  Here the continued operations of DS, which require the payment of the

17  items contained in the DS Budget, is grounded in a sound business purpose.

18          In order to preserve and extract the value of the multiple projects in which

19  DS is invested, and for which the Debtor and his estate stand to benefit greatly by their

20  success, DS must maintain its operations.  The projects require the type of effort,

21  guidance, and professional experience and expertise that the DS staff provides.  The

22  Debtor submits that were DS not there to supervise the projects, seek out alternative

23  sources of funding, negotiate with lenders, interact with municipalities, develop, organize,

24  projects and shepherd them through to completion, the Debtor and the Estate would

25  likely be compelled to retain outside professionals, at a considerably higher expense, to

26  provide these services.  In relation to the total estimated equity that the Debtor believes

27  he has in the DS projects, the requested expenditure is modest and reasonable.  There

28  can be no question that the preserving the value of the DS projects is in the best interest

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 | of the Estate, and as such, funding the continued operations of DS during the pendency

2 | of the Debtor's case fosters such interests and should be approved. If the DS projects

3 | were not protected and advanced, the properties would likely be lost to foreclosure. If

4 | this were to occur, not only would the Debtor's estate lose the potential and significant

5 | upside of those projects, but the exposure of the Estate on the Debtor's guarantees of the

6 | debt secured by the projects would undoubtedly be compounded.

7 | **V.**

8 | **CONCLUSION**

9 | **WHEREFORE**, based upon the foregoing, the Debtor respectfully submits

10 | that the Budget should be approved in its entirety for a period of 180 days, without

11 | prejudice to the Debtor seeking extension or modification of the Budget for cause shown.

12 |

13 | DATED:  July 10, 2009          Respectfully submitted,

14 |

15 | **Sulmeyer**Kupetz
A Professional Corporation

16 |

17 | By: _____
Victor A. Sahn

18 | Mark S. Horoupian
[Proposed] Attorneys for David Schwartzman,

19 | Debtor and Debtor in Possession

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[MSH\MTN\527417.1]

1        **DECLARATION OF BRADLEY WOOMER**

2

3        I, BRADLEY WOOMER, declare as follows:

4

5        1.      I reside in the State of California, County of Los Angeles, and am the

6    Chief Operating Officer of DS Ventures, LLC, a California limited liability company ("DS

7    Ventures"). I have personal knowledge of those matters set forth in this declaration and,

8    if called upon as a witness, I could and would testify competently thereto. As used herein

9    the term "DS" shall refer to DS Ventures and its related and affiliated entities.

10       2.      **Background and Employment**

11       a.      DS is engaged in the business of real estate investment and

12   development, primarily in the Southern California region.

13       b.      I was employed by Patriot Homes, Inc., a California

14   corporation ("Patriot") from 1997 through 2008. All of the issued and outstanding shares

15   in Patriot are owned by David Schwartzman ("Schwartzman"). Patriot was formerly

16   engaged in the business of real estate investment, development, home construction and

17   acted as the management entity for the various projects entities in which Schwartzman

18   involved in developing. The majority of the projects in which Patriot was involved were

19   single-family home tracts projects located in and around Fresno, California.

20       c.      Patriot is no longer actively engaged in business or

21   operational. However, Patriot still exists from as a legal entity and will file a tax return for

22   2008. As of June 15, 2009, Patriot no longer had any employees.

23       d.      Patriot wound down its business operations because of the

24   declining California real estate market combined with the fact that the projects in Fresno

25   and Clovis, California in which it was involved had been completed. No new projects

26   were commenced that required the involvement of Patriot.

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

    e.  I have worked with Mr. Schwartzman since 1997 with and through Patriot and DS.  During this time I initially served as Chief Financial Officer and more recently served as Chief Operating Officer.

    f.  My duties as Chief Financial and Operating Officer included:

    (1)  The maintenance and assembly of financial data relating to, and overseeing the preparation of tax returns;

    (2)  Managing relationships with third party equity investors such as Lehman Brothers and its related and affiliated entities ("Lehman");

    (3)  Fostering and managing relationships with all lenders providing construction financing and other funds;

    (4)  Overseeing the performance under all loans and financial facilities and renegotiating the terms thereof;

    (5)  Managing all loan disbursements and draw requests;

    (6)  Managing the day-to-day operations of all of the entities under which the business of DS is conducted;

    (7)  Preparing applications and accompanying documentation in connection with obtaining loans relating to the acquisition and development of properties, the construction of improvements on such properties and undertaking modification and extension of loans on existing properties;

    (8)  Overseeing the income, expenses, receipts and disbursements relating to DS its administrative operations;

    (9)  Obtaining, maintaining updating insurance for the projects undertaken by DS and the business and assets of DS;

    (10)  Overseeing the acquisition and disposition of properties owned, held or controlled by DS; and

    (11)  Working and coordinating with legal counsel in connection with the handling of various legal disputes, claims and issues arising in the course of the business of DS.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    3.    Prior to my employment with Patriot and DS, I was employed with

2  Sonnenblick-Goldman Company, a real estate investment banking firm.  I was an

3  associate involved in the financing and sale of income producing properties.  My duties

4  there involved underwriting and conducting and coordinating due diligence on behalf of

5  clients seeking to financing or sell income-producing properties.   I was responsible for

6  the creation of financing documents and sale memoranda, the management of the

7  information exchange during the financing process and other tasks related to such

8  financing and sales transactions.

9    4.    I hold a Bachelor of Science Degree in Business from the University

10  of Southern California and a Master of Business Administration from New York

11  University's Leonard N. Stern School of Business.

12    5.    **Interests in Entities**

13    a.    I hold seven percent (7%) percent membership interest in DS.

14    (1)    Lakeside Capital Partners, LLC, a Delaware limited

15  liability company ("Lakeside") acted as a consultant and money manager for Lehman.

16  The projects in which Lehman was involved with DS involved Lakeside.

17    (2)    Bryan Troxler through his affiliated and related entities

18  ("Troxler") also acted as a consultant and money manager for Lehman.

19    (3)    DMB Ventures, LLC, a California limited liability

20  company ("DMB") was formed to hold the membership interests in the seven residential

21  real estate development projects in which Troxler was involved in Fresno and Clovis,

22  California.  These were and are real estate entitlement transactions.  Properties would be

23  purchased, entitled for the construction of improvements and then sold.

24    b.    I also hold a seven percent (7%) membership interest in DMB.

25    c.    San Feliciano Holding Company LLC, a Delaware limited

26  liability company ("San Feliciano") is the owner that certain real property commonly

27  known as 22255 Mulholland Drive, Woodland Hills, California (the "San Feliciano

28  Property").  The San Feliciano Property consists of approximately 8.8 acres of land and

1 entitlements have been sought construct approximately twenty-three homes which when

2 completes are expected to sell for an average price of approximately $800,000.

3         d.     DS has an undivided fifty percent (50%) interest in San

4 Feliciano.

5      6.    **Bankruptcy Filings and Causes**

6         a.     On June 1, 2009 Schwartzman filed a petition under Chapter

7 11 of the U.S. Bankruptcy Code as Case Number 1:09-bk-16565 which case is pending

8 before this Court (the "Schwartzman Bankruptcy").

9         b.     On June 1, 2009 San Feliciano filed a petition under Chapter

10 11 of the U.S. Bankruptcy Code as Case Number 1:09-bk-16563 which case is pending

11 before this Court (the "San Feliciano Bankruptcy").

12         c.     The San Feliciano Bankruptcy was necessitated, in part, by

13 the fact that the lender on the San Feliciano Property, Central Pacific Bank ("Central

14 Pacific"), commenced a pending non-judicial foreclosure proceeding on this Property.

15         d.     Central Pacific is the lender under three projects in which DS

16 or DMB have an interest.  These loans were personally guaranteed to various extents by

17 Schwartzman.  Central Pacific commenced an action in California state court to enforce

18 these guarantees.  In connection with this action Central Pacific sought and was granted

19 a prejudgment writ of attachment against Schwartzman.  The precipitated the filing of the

20 Schwartzman bankruptcy.

21         e.     Various financial concerns and conditions led to the filing of

22 the Schwartzman and San Feliciano bankruptcies.  These include, but are not limited to,

23 the following:

24         (1)     The Writ of Attachment obtained by Central Pacific;

25         (2)     The non-judicial foreclosure proceeding commenced by

26 Central Pacific relating to the San Feliciano Property;

27         (3)     The financial collapse of Lehman which was the

28 primary source of equity for DS and DMB on approximately twenty (20) projects.   The

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA, 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[MSH\MTN\527417.1]    - 28 -

1  collapse resulted in Lehman's utter failure to honors its capital funding commitments

2  which were substantial.  The problems with Lehman's funding initially began in the Spring

3  of 2008.  Thereafter, Lehman's funding performance worsened and was followed by its

4  ultimate collapse and bankruptcy.  Pursuant to the agreement of DS and DMB with

5  Lehman, Lehman was to fund ninety percent (90%) of the capital needs for each project

6  with DS or DS or DMB, as applicable, funding the remaining ten percent (10%).  Thus,

7  based upon his guarantees to various lenders and his interests in DS and DMB

8  Schwartzman was required to personally fund the necessary capital for the projects.

9  Lehman's decline and ultimate financial collapse was the single most important factor in

10  the decline of the various entities in which Schwartzman (and DS and DMB) was

11  involved, even more so than the in the decline in the California real estate market and the

12  constriction of the capital markets;

13               (4)     The general decline of the real estate markets in

14  Southern and Central California; and

15               (5)     The virtual freeze of the capital markets in the

16  throughout California, the United States and the world.

17          7.    **Management of DS/DMB Ventures**

18               a.    Managing Member:  Schwartzman is the majority interest-

19  holder and the Managing Member of DS and DMB.  He has more than eighteen (18)

20  years of real estate experience.  He began his real estate development career in

21  California in 1990 with the acquisition and entitlement of land and the construction of

22  single family homes.  In 1993 Schwartzman founded Patriot.  Patriot and its related and

23  affiliated entities operated a dynamic real estate development business which

24  successfully acquired, entitled, and permitted properties on which it constructed

25  thousands of single-family homes, condominiums and PUDs.  In 1999 Schwartzman

26  founded DS to concentrate on land acquisition and entitlement projects, as well as, the

27  acquisition and development of residential and commercial real property in Central and

28  Southern California.  To date DS has acquired developed and/or improved several

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  hundred million of dollars worth of real estate. Presently, DS and DMB owns or controls

2  over 1,500 lots and units located throughout Central and Southern California in the

3  counties of Santa Barbara, Los Angeles, Fresno and Kern.

4          b.    <u>CFO/COO</u>:  As stated above, I have been with Patriot and DS

5  since 1997 initially as the Chief Operating Officer and later as the Chief Operating Officer.

6  I have the experience, education and perform the duties described above.

7          c.    <u>General Counsel</u>:  James D. Hearn ("Hearn") is an attorney

8  with approximately 25 years of real estate experience.  Prior to joining DS as its general

9  counsel in August 2007 Hearn was a partner in the Encino law firm of Corleto, Ackerman

10  & Hearn, LLP where his practice focused on tax, corporate, real estate, trust & estate

11  planning and healthcare law.  Hearn has been published in various legal publications,

12  lectures on various bioethical topics, and is a professor of health care ethics at the

13  California State University, Northridge.  Hearn received his law degree from the

14  University of Southern California and holds dual Master of Law degrees in Taxation from

15  the University of San Diego and Alternative Dispute Resolution from the Straus Institute

16  at the Pepperdine School of Law.  In addition, he holds Master Degrees in Church History

17  from Fuller Theological Seminary and Bioethics from the University of Loyola – Chicago

18  Strick School of Medicine.

19          d.    <u>Head of Construction and Planning</u>.  Marc Annotti ("Annotti")

20  has been with Patriot and DS since 1998 and has over 25 years of real estate

21  experience.  In addition to being a licensed General Engineer and General Contractor

22  Annotti has extensive experience in land use and entitlement.  His responsibilities include

23  strategic and advance planning, development processing and representing DS with

24  public officials and city representatives, as well as, working closely with engineers and

25  architects on project design and construction.  Annotti holds a Bachelor of Arts degree

26  from the University of California at Los Angeles.

27          e.    <u>Project Manager</u>.  Mitch Canada ("Canada") has over 20

28  years of real estate construction experience and has been responsible for the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  development of over 3,000 residential units in Southern California.  Prior to joining DS in

2  2003, Canada acted as a consultant with Simon & Sons Realty Group where he was

3  responsible for the disposition of underperforming real estate portfolios.  Additionally, for

4  the last seven years Canada has been a contributing member of IBICOS (a joint venture

5  between the Department of Energy and the building industry) where he has been

6  instrumental in evaluating new building technologies presented by entities such as MIT

7  and G.E. Plastics.  Canada holds a Bachelor of Science from the University of Utah.

8             8.    **Dissolving Member**

9             a.    DS and Lakeside are the members of LB/L-DS Ventures, LLC

10  ("Master 1").  Master 1 owns controls the projects described below as Fresno, Clovis,

11  Playa, Bakersfield, Lompoc Apartment and Mini-Storage and Lompoc II.

12            b.    DS and Lakeside were also the members of LB/L-DS

13  Ventures II Master, LLC ("Master 2").  Master 2 owns controls the projects described

14  below as Metropolitan, San Feliciano, and Caheunga.

15            c.    DS and Lakeside were also the members of LB/L III-DS

16  Ventures IV Master, LLC ("Master 4").  Master 4 owns the projects described below as

17  Sherman Way.

18            d.    DS was the operating member of Master 1, Master 2 and

19  Master 4, the operation of which is governed by those certain Operating Agreement

20  entered into as of April 29, 1999, November 2001 and July 14, 2006, respectively, and as

21  amended (the "Agreements").  Lakeside is the other member in these entities.  Lakeside

22  previously acted as the managing member for Master 1, Master 2 and Master 4.

23            e.    Lakeside had certain capital funding obligations with regard to

24  the projects and properties owned by and through Master 1, Master 2 and Master 4 which

25  it failed to honor. DS gave Lakeside notice of the defaults which Lakeside failed to cure.

26            f.    Under the Agreements, in the event of a default by a member

27  (in this case Lakeside) the non-defaulting member (in this case DS) can make the

28  election to dissolve the entity.  DS made this election.  The non-defaulting member, in the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  event of such election, becomes the liquidating member.  Thus, upon making the

2  liquidating member DS became the liquidating member with the right to oversee the

3  winding up of Master 1, Master 2 and Master 4.  This we are doing.  As the liquidating

4  member we have authority to execute all documents on behalf of Master 1, Master 2 and

5  Master 4.

6          9.     Current Projects:  The illiquid real estate market and the current state

7  of the capital markets make real estate development especially challenging. One

8  traditional exit strategy was to sell the entitled property to another builder.  This avenue is

9  currently rarely available which necessitates that we develop and build out of our

10  projects.  Many, if not all, of our projects involved complicated entitlement issues or are

11  otherwise politically sensitive.  Our area of expertise is in dealing with such projects.

12  Thus, our personal involvement in the projects is central to the maximization of their

13  value.  We have extensive experience in dealing with the governmental and other entities

14  involved in the entitlement and permitting process. The projects currently under

15  development by Schwartzman, his management team and business entities include the

16  following:

17          a.     The Metropolitan:  The property is located in Hollywood on

18  Sunset Boulevard just west of the 101 Freeway and was previously operated as a 12-

19  story hotel with 25,000 square feet of two-story retail.  It was acquired in 2005.  Since the

20  acquisition of the property DS has entitled the property for redevelopment as a 52-unit

21  market rate apartment building, 40,000 square feet of creative office space, 79 apartment

22  units (to be located on the adjacent lot) and obtained the right to erect two supergraphic

23  signs on the apartment building (one to face eastward toward the 101 Freeway and the

24  other to face west on Sunset Boulevard).  Additionally, the adjacent 79-unit apartment

25  project will possess roof signage.  The project design required DS to obtain approval from

26  the City to transfer the allowable floor area between the two separate parcels, as well as

27  to obtain approval from the CRA for the wall-graphic signage.  The approvals for the zone

28  change to C2-2D-SN and two tentative maps for the Property were approved by the City

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Planning Commission on July 13, 2006, the Los Angeles City Council on December 13,

2  2006 and the Mayor on December 29, 2006, constituting final approval.  We have

3  completed construction on, and obtained a certificate of occupancy for, the apartment

4  tower and are overseeing its lease-up.  We are also completing the negotiation of the

5  agreements necessary to the erection of the signage.  The value of such signage could

6  be an amount equal to the price paid for the Property.  GE Commercial Capital ("GE") is

7  the lender on the Property and failed to honor its obligation to fund pursuant to the terms

8  of the loan.  This has led to the filing of numerous liens on the property and the filing of

9  more than 25 lawsuits to foreclose such liens.  GE has also recorded a Notice of Default

10  against the property commencing its non-judicial foreclosure action.  We have responded

11  to and are funding such litigation and have brought a claim against GE based, in part, on

12  a lender liability cause of action.  We are managing such litigation, overseeing the lease

13  up of the Property and considering our options regarding the best course to preserve and

14  maximize the value of the Property.

15           b.     Fountain & Wilcox:  DS controlled that certain 1.27 acre site

16  located at 1277 Wilcox Avenue, Los Angeles, California.  The project was designed for

17  thirty-four single family units under the new Small Lot Subdivision Ordinance. The project

18  required the preservation of a historic structure located on the site which was donated to

19  the Hollywood Community Housing Corporation.  This project has been sold. As a part of

20  the purchase price, DS received a $100,000 equity interest in the project and a

21  promissory note executed by the purchaser in the amount of $1,000,000.  We are

22  working to assist the current owner and its development team in its dealing with the City

23  and the various historical preservation entities.

24           c.     Sports Authority:  DS acquired the existing 97,600 square

25  foot, three-story mixed-use building located at the corner of Sepulveda Boulevard and

26  Missouri Avenue in Los Angeles, California.  The property is currently 100% occupied by

27  a Sports Authority store on the ground floor (comprising 31,600 square feet) and by

28  Westwood Self Storage on the second and third floors (comprising 66,000 square feet).

1  The master lease on the mini-storage is currently substantially below market with

2  approximately 15 months remaining on the lease.  DS is currently in discussions to

3  terminate the current master lease on the mini-storage and re-lease the space at market

4  rates.  The Sports Authority lease is also currently substantially below market and

5  terminates in approximately seven years.  DS is investigating a revenue sharing clause in

6  the lease which is based on a base-line dollar amount set many years ago.  DS believes

7  that this could result in substantial additional revenue under this lease. The property is

8  also eligible for advertising signage relating to any products or manufacturers which sell

9  products at the Sports Authority (*i.e.*, Nike, Reebok).  There is currently potential for two

10  such signs.  We are working to maximize revenues obtained from this property.

11          d.    St. Luke's Medical Center:  DS in partnership with Lehman

12  acquired the former St. Luke Medical Center located at Washington Boulevard and

13  Altadena Drive in Pasadena, California.  The property consists of 13.4 acres on which is

14  currently located a 130,000 square foot hospital building, two office buildings, seven

15  single family dwellings and a ten-acre surfaced parking lot.  DS has worked to obtain a

16  Conditional Use Permit ("CUP") to convert the hospital portion of the Property to an

17  Assisted Living Facility and to lease-up the two existing office buildings and receive

18  approval for an additional three office buildings totaling 100,000 square feet.  DS has also

19  explored the construction of 160 age-restricted apartment units.  Lehman held the debt

20  on the project which it pledged as collateral.  Such collateral we executed upon by its

21  creditors and the loan is now overseen by a receiver.  DS has been actively working with

22  the receiver to manage the Property and to maximize its value.

23          e.    Cahuenga:  DS purchased this 6.97 acre site located at 2775

24  Cahuenga Boulevard in Hollywood, California in partnership with Lehman.  The site has

25  been re-zoned for 75 market-rate apartment units and a tentative map has been

26  approved.  DS intends to move the project on to the construction phase by either self-

27  funding or the use of outside equity.  Because the current state of the real estate and

28  capital markets the only exit strategy is to build out of the Project.  Thus, we are

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  negotiating with various non-traditional funding source to obtain the funds necessary to

2  undertake the construction of the Project, through outside equity or self funding to

3  construct apartment.

4          f.     San Feliciano:  DS and Lehman purchased this 8.8 acre site

5  located at 22255 Mulholland Drive (east of the San Feliciano Drive/Mulholland Drive

6  intersection), Woodland Hills, California in December 2006.  DS designed this project to

7  adapt hillside development and in compliance with the guidelines and restrictions of the

8  Mulholland Specific Plan.  It was also require that the design be created to save and

9  preserve over 100 oak trees located on the site.  We are completing the entitlement

10  process for the construction of 23 single family homes of the Property.  The lender on the

11  property is Central Pacific who commenced a non-judicial foreclosure proceeding against

12  the Property which was placed into bankruptcy on June 1, 2009.  We are currently

13  supervising and managing the bankruptcy proceeding and the litigation brought against

14  Central Pacific based, in part, on its act and omissions relating to this Property and the

15  loan secured by it.

16          g.     Sherman Way:   DS in partnership with Lehman acquired this

17  2.18 acre site located at 14717 Sherman Way, Van Nuys, California east of the Kester

18  Avenue/Sherman Way intersection.  The project is designed for 63 detached row homes

19  under the Small Lot Subdivision Ordinance. The application for a tentative tract map was

20  approved by the Planning Advisory Agency on May 11, 2007.  DS is exploring its

21  opportunities with regard to this Property and current intends to construct either the row

22  homes or apartments on the Property.

23          h.     Playa Del Rey:  DS in partnership with Lehman acquired this

24  property from the Howard Hughes Corporation in May 2002.  The site is located at 63rd

25  Avenue and Esplanade Street in Playa Del Rey, California and fronts the Ballona

26  Lagoon, providing ocean views.  Presently DSV is in a lawsuit with the City of Los

27  Angeles regarding the unauthorized downzoning of the property.  We are dealing with

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[MSH\MTN\527417.1]

1   this litigation and are engaged in ongoing settlement negotiations regarding this matter all

2   in an effort to maximize the recovery on this property.

3                    i.        Highland Mixed Use:  DS in partnership with Lehman

4   acquired this parcel located south of Sunset Boulevard on Highland Avenue in the

5   Hollywood section of Los Angeles in November 2005.  DS entitled the property for 65

6   residential units and 7,000 square feet of ground floor commercial space.  The property

7   was in March 2006.  However, pursuant to the terms of such sale DS retained the interest

8   in the commercial space which Lennar is required to build out and deliver the ground floor

9   space to a shell and return it to the DS at no cost.

10                   j.        Clovis:  DS was completing the build out of eighty-nine  single

11  family homes in Clovis, CA.  The first phase of this project was entitled and sold by us.

12  The lender on this Property is Central Pacific which has commenced an action for judicial

13  foreclosure against the Property.  We are exploring our options with regard to this

14  Property and also have litigation pending against Central Pacific relating to its acts and

15  omissions with regard to this loan.

16                   k.        Fresno/Bakersfield:  DS owns these properties in partnership

17  with Lehman and is currently completing the construction of the nine remaining homes

18  and the remaining site improvements on the Fresno property.  On the Bakersfield

19  property we are seeking to sell the eleven remaining finished lots to satisfy the loan

20  secured by the Property.

21                   l.        Lompoc Mini-Storage and Apartments:  DS has commenced

22  construction of a 72,000 square foot mini storage facility and a 64-unit apartment building

23  in Lompoc, Santa Barbara County, California.  The intent is to complete the construction,

24  lease up and stabilize the properties and then sell them.  This is expected to be a three

25  year process.

26                   m.        Lompoc II:  This 40-acre site is located at the corner of North

27  Avenue and Bailey Avenue in Lompoc, Santa Barbara County, California.  The site is

28  currently zoned AG-II-100 for agricultural uses. DS is currently processing the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   annexation, zone change and general plan amendment applications to allow for

2   approximately 300 single family home lots (ten residential units per acre) and 100

3   apartment units.  It is estimated the tentative map will be approved in 2009 or 2010.

4   Upon approval DS will either develop the homes or sell the land to a large public or

5   private builder and build the apartment units.

6              n.       Riverfront:  DS in partnership with Lehman own this sixty-six

7   acre site located at the northwest corner of Josephine Avenue and Riverside Country

8   Club Drive in Fresno, California. The project, adjacent to the San Joaquin River, required

9   a design that preserved a federally endangered species and provided protection to a

10  riparian habitat. DS split the parcels under two tentative tract maps and received approval

11  from the Planning Commission for a zone change to R1 and a tentative map on

12  approximately 52 acres for 230 single family lots on November 16, 2005.  The remaining

13  acreage is currently awaiting a general plan amendment review and approval.  Upon final

14  approval the project will consist of 230 single family lots and 180+ garden apartment units

15  and 200,000 square feet of Class A industrial space.  The lender on this property is also

16  Central Pacific which instituted a non-judicial foreclosure proceeding against this

17  Property.  The sale of the Property is currently scheduled for July 15, 2009.  A

18  continuance of this sale was requested of Central Pacific, which request was denied.  It is

19  anticipated that the project will be placed in bankruptcy to protect its value.

20             o.       McKinley IV, V & VI:  This projected is owned with  Lehman

21  Brothers through DMB.  The projects are located in Fresno, west of the 99 Freeway and

22  comprise an assemblage of 107 acres that will yield approximately 450 single-family

23  homes.  Tentative maps have been approved and the properties are currently being

24  annexed into the City of Fresno for development purposes.

25             p.       113 North San Vicente:  DS acquired an undivided one-half

26  tenancy-in-common interest in that certain 16,000 square foot office building located at

27  113 North San Vicente Boulevard, Beverly Hills, California in March, 2008.  The property

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  consists of two floors of office space and two floors of parking space located on the

2  ground floor and one level of subterranean parking.

3         q.      Variel:  DS purchased this property located in the Warner

4  Center section of Woodland Hills in January, 2008.  The property consists of 147,000

5  square feet: 102,500 square feet of office space and 45,400 square feet of 22'-24' clear-

6  height warehouse space.  We are currently acting as the property manager for the

7  Property and attempting to lease up the Property and exploring other income generating

8  uses for the Property (*i.e.*, use for film production).

9         10.    The Budget, attached hereto as Exhibit 1, represents the

10  expenditures that are projected with to (a) pay for the Debtor's personal living expenses;

11  and (b) fund the operations of DS, while DS completes its role as the dissolving member

12  of the projects listed in Paragraph 9 above, and/or manages the completed or partially

13  completed projects.

14         11.    The continuation of DS's business operations is critical to the

15  preservation of the Debtor's equity and ownership interests in the DS projects, which will

16  ultimately provide the basis for the Debtor to propose a plan of reorganization in his case.

17  The attention and expertise that DS provides will also limit the exposure that the Debtor

18  has on his various personal guarantees of the loans secured by the projects, which also

19  confers a direct benefit on the Debtor's estate as this will either eliminate or minimize the

20  claims that the lending institutions will have against the Debtor.

21         12.    The Debtor included a similar budget in the Debtor's "7-Day

22  Package" provided to the Office of the United States Trustee (the "Original Budget").  The

23  Budget attached hereto is a modified version of the Original Budget, which among other

24  things, eliminates the salary being paid to the Debtor, and accounts for the elimination of

25  the expense associated with one leased vehicle, for which the last payment was made in

26  July.

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

13.   The Budget is broken down into two categories—personal expenses of the Debtor (the "Personal Expense Budget"), and the business expenses of DS (the "DS Budget"). Each category is described with more particularity below:

14.   <u>The Personal Expense Budget</u>: The Debtor's personal living expenses are listed with particularity in the Budget. The Debtor's total monthly living expenses, on a go-forward basis are $39,743.91.

a.   <u>Mortgage</u>: The most significant expenditure are the mortgage payments that the Debtor is required to make, and which are secured by deeds of trust against the Debtor's residence. Between the first mortgage, and the two junior mortgages, the Debtor's total monthly payments are $22,222.08 per month. The total encumbrances are approximately $3,170,000, and the Debtor believes that the residence has a current fair market value of approximately $6,500,000. The encumbrances include a $2,238,288 first deed of trust held by Countrywide (now Bank of America); and second and third deeds of trust totaling $932,500 in favor of Jerry and Jon Monkarsh (the "Monkarsh Loans"). The Monkarsh Loans were borrowed by the Debtor, but the funds were used entirely in the Debtor's business. In short, only the Countrywide/Bank of America indebtedness constitutes purchase money debt on the property. In order to protect the value for the Estate of this important asset (which has approximately $3.3 million in equity), it is imperative that the Debtor be permitted to service the loans secured by the residence. Failure to pay the mortgages would result in the accumulation of interest, attorneys' fees and penalties, at best, and foreclosure at worst.

b.   <u>Property Maintenance and Related Items</u>: In addition to the mortgages described above, the Debtor must pay ordinary and customary maintenance items associated with the home, including electricity, water, utilities, pool and yard maintenance, housekeeping, etc. The total amount of these expenses is $3,180, which the Debtor submits that these expenses are reasonable, necessary, and customary for the maintenance of the Debtor's residence.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1          c.      <u>Auto Expenses</u>: The Debtor leases one vehicle and owns

2  another vehicle.  The total automobile payments, not including insurance, are

3  approximately $6,850 per month.  The Debtor believes that one vehicle that is owed, and

4  against which there is a secured claim has equity of approximately $65,000.  Thus, as

5  with the residence, it is important for the Debtor to continue to service the loan to protect

6  the value of this asset.  As stated above, the lease for one vehicle expires at the end of

7  July, and will be returned.  Accordingly, on a going forward basis the cost of this vehicle

8  will be eliminated.

9          d.     <u>Other Expenses</u>: In addition to the foregoing, the Debtor has

10  budgeted customary and ordinary course expenditures such as food, entertainment,

11  insurance (medical, dental, automobile, residential, umbrella), taxes not deducted from

12  mortgage payments (property taxes), clothing and dry cleaning.

13        15.    The DS Budget:  As described in great detail above, the cornerstone

14  of the Debtor's restructuring efforts will come from the completion and sale of the various

15  and substantial real estate projects of DS, in which the Debtor is the managing member,

16  and the majority equity holder.  In order to protect and foster the considerable

17  investments and equity the Debtor believes exist in these projects, notwithstanding the

18  havoc wrought upon them by Lehman's demise and refusal to abide by its contractual

19  obligation to fund, DS must continue to operate.  In particular the people that make up

20  DS's workforce, must continue to seek out alternative, non-traditional funding or equity

21  sources, negotiate with lenders, develop plans for projects, address legal, zoning,

22  entitlement and planning issues, and otherwise manage the existing projects.  Of course,

23  in order to maintain the operations, the workforce (which has already been trimmed back

24  significantly), must be paid.   While the projects are effectively frozen while alternative

25  funding is sought out, DS has required, and will continue to require capital infusions from

26  the Debtor.  The total expenditures of DS amount to approximately $133,000 per month.

27          a.     <u>DS Salaries</u>:  Approximately $52,600 of the DS Budget

28  constitutes salaries of DS's staff of highly trained professionals.  The Original Budget

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  submitted with the 7-Day package had a significantly higher amount budgeted because it

2  included a salary of $50,000 to the Debtor, which has been eliminated ($25,000 was

3  paid).  Further, the salary amount listed for the Debtor's CFO of $7,000 a month has

4  been eliminated, and the duties of the CFO have been assumed by me.  The remaining

5  salaries include my salary, and the salaries of general counsel, James Hearn,

6  construction and planning, Mark Annotti, project manager, Mitch Canada,

7  bookkeeping/accounting, and office manager/administrative assistant.  Each of these

8  individuals is critical to the continued operation of DS.  Based on my years of experience

9  in the real estate industry, with Patriot, DS, and otherwise, I believe the salaries are all

10  reasonable given the levels of expertise and experience DS's staff provides.

11              b.    Other Expenses:  In addition to the salary expenses, the DS

12  Budget includes ordinary operating expenses such as utilities, phone, internet, copying,

13  offices supplies, and insurance (workman's compensation, liability, property and office).

14  In addition, DS employs outside counsel to represent it in legal proceedings, outside

15  accountants to provide tax preparation services.  The attorneys hired directly by DS

16  represent DS is all non-bankruptcy legal proceedings and litigation, including litigation

17  regarding the Metropolitan projects, and the project in which Central Pacific Bank is the

18  lender.  DS also pays outside consultants approximately $10,000 per month to provide

19  construction and engineering expertise where needed.

20              c.    Interest Expense:  In addition to the above expenses, DS

21  pays approximately $13,671 per month in interest expense on three loans.  The payment

22  to US Bank for $824 is an interest only payment for a $225,000 loan that is secured by a

23  $250,000 CD provided by the Debtor as collateral.  The US Bank for $6,947 is amortizing

24  loan that will be repaid in approximately 16 months and is secured by one of the Debtor's

25  money market accounts for $140,000.  Finally, the Playa Del Rey loan payment, Playa

26  del Rey payment is for a land loan with Cathay Bank with an outstanding balance of

27  $1,156,598.  The payments are interest only payments at 5.75%-with the loan maturing

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   on August 7, 2009. As described in Paragraph 9.h above, the property is owned by

2   Master 1.

3           16.    The expenditures in the DS Budget constitute the normal and

4   customary business expenses for DS and are considered customary expenses for any

5   real estate development company with the level and sophistication of operations as those

6   which are found in DS. The Debtor has been in the business of real estate development

7   since 1993.  As he built Patriot Homes and then, DS, since the founding of each

8   company, the categories of expenses set forth in the Budget represent typical categories

9   of expenses incurred by a real estate development company of the size and project-type

10  as those which are found in the development portfolio of DS.

11          17.    It is not an uncommon practice for limited liability companies

12  engaged primarily in real estate development to receive funding from its managing

13  member while projects are developed, and until capital events occur such as a sale or

14  investment by a third party in a project.

15          18.    Given that almost 90% of the $60 million of unsecured debt listed by

16  the Debtor in his schedules is held by financial institutions who lent to certain DS entities,

17  and hold personal guarantees by the Debtor, it is implausible that such creditors would

18  not expect that DS would require funding from its managing member, the Debtor, to

19  maintain operations.  Each of the lenders holding these claims against the Debtor were

20  obviously aware that the Debtor was in the real estate development and management

21  business, as the loans were primarily made to a DS-controlled entity for the specific

22  purpose of acquiring and developing specific parcels of real estate.

23          19.    Where the Debtor is the majority equity holder, and managing

24  member of DS, and where even in an economy where real estate lending was

25  accessible, it is beyond question that DS would not have regular sources of income while

26  projects are being developed.  It is typical and customary for the operational expenses of

27  such business to be funded by their principals pending the capital events such as a sale

28  of a project.

1    20.    In order to preserve and extract the value of the multiple projects in

2    which DS is invested, and for which the Debtor and his estate stand to benefit greatly by

3    their success, DS must maintain its operations.  The projects require the type of effort,

4    guidance, and professional experience and expertise that the DS staff provides.

5    21.    Were DS not there to supervise the projects, seek out alternative

6    sources of funding, negotiate with lenders, interact with municipalities, develop, organize,

7    projects and shepherd them through to completion, the Debtor and the Estate would

8    likely be compelled to retain outside professionals, at a considerably higher expense, to

9    provide these services.  In relation to the total estimated equity that is believed to exist in

10    the DS projects, the requested expenditures are modest and reasonable.

11    22.    In my opinion, there can be no question that the preserving the value

12    of the DS projects is in the best interest of the Estate, and as such, funding the continued

13    operations of DS during the pendency of the Debtor's case fosters such interests and

14    should be approved.

15    23.    If the DS projects were not protected and advanced, the properties

16    would likely be lost to foreclosure.  If this were to occur, not only would the Debtor's

17    estate lose the potential and significant upside of those projects, but the exposure of the

18    Estate on the Debtor's guarantees of the debt secured by the projects would undoubtedly

19    be compounded.

20    24.    I make these statements based upon my years of experience

21    working for Patriot, and DS since 1997 and my prior working experience with

22    Sonnenblick-Goldman Company, a major real estate investment banking firm.  I have

23    worked in the real estate industry since my graduation from the Masters Program at New

24    York University's Leonard N. Stern School of Business.  This experience permits me to

25    testify to the fact that the expenses shown in Exhibit "1" are normal and customary.

26    / / /

27    / / /

28    / / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[MSH\MTN\527417.1]

1 | relative to the business expenses listed and are and continue to be normal and

2 | customary.

3 |     I declare under penalty of perjury under the laws of the United States of America

4 | that the foregoing is true and correct.

5 |     Executed July 10, 2009, at Los Angeles, California.

6

7

8 | BRADLEY WOOMER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 · FAX 213.629.4520

# EXHIBIT 1

<u>DAVID SCHWARTZMAN</u>

<u>PROFORMA PERSONAL MONTHLY EXPENSES</u>

<u>AUGUST 2009 AND FORWARD</u>

MORTGAGE PAYMENT

| | | | | | |
|---|---|---|---|---|---|
| 1ST | CONTRYWIDE HOME LOANS | 13,247.10 | | | |
| 2ND | JERRY AND JON MONKARSH | 3,850.00 | | | |
| 3RD | JERRY AND JON MONKARSH | 5,124.98 | | | |
| | | | $ | 22,222.08 | |

| UTILITIES | ELECTRIC | 600 | |
|---|---|---|---|
| | WATER | 750 | |
| | PHONE | 205 | |
| | OTHER    TV AND INTERNET | 245 | |
| | | | 1,800.00 |

| HOME MAINTENANCE (REPAIRS & UPKEEP) | | |
|---|---|---|
| POOL | 255 | |
| HOUSKEEPER | 800 | |
| REPAIRS AND SUPPLIES | 200 | |
| YARD | 125 | |
| | | 1,380.00 |

| | |
|---|---|
| FOOD.....AND ENTERTAINMENT | 4,000.00 |
| CLOTHING | 1,000.00 |
| LAUNDRY AND DRY CLEANING | 350.00 |
| MEDICAL AND DENTAL | 300.00 |
| TRANSPORTATION (NOT INCLUDING CAR PAYMENTS) | 750.00 |
| RECREATION, CLUBS AND ENTERTAIN, NEWSPAPERS, MAGAZINES, ETC | 600.00 |
| CHARITABLE CONTRIBUTIONS | - |

| INSURANCE | | YR | MO | |
|---|---|---|---|---|
| | HOMEOWNER'S | 15,450.00 | 1,287.50 | |
| | AUTO | 6,276.00 | 523.00 | |
| | OTHER:    UMBRELL | 1,600.00 | 133.33 | |
| | | 23,326.00 | 1,943.83 | 1,943.83 |

| | |
|---|---|
| TAXES (NOT DEDUCTED FROM WAGES OR IN HOME MORTG PAYMENTS) | 2,413.00 |

| INSTALLMENT PAYMENTS: | | | |
|---|---|---|---|
| AUTO | LOAN | 2,985.00 | |
| | | - | |
| | | - | |
| | | | 2,985.00 |

| | |
|---|---|
| ALIMONY | - |
| PAYMENTS FOR DEPENDENTS NOT LIVING WITH YOU | - |

| | | |
|---|---|---|
| **TOTAL PERSONAL MONTHLY EXPENSES** | $ | 39,743.91 |

SCHWARTZMAN-REVISED MONTHLY CASHFLOW-AUG FORWARD.xls
7/10/2009 12:49 PM
1 of 1

**DAVID SCHWARTZMAN**

<u>PROFORMA MONTHLY BUSINESS EXPENSES</u>

**AUGUST 2009 AND FORWARD**

### SALARIES FOR DS VENTURES

| | |
|---|---:|
| COO/CFO | 15,000.00 |
| LEGAL | 15,000.00 |
| CONSTRUCTION | 7,000.00 |
| ACCOUNTING/BOOKEEPER | 3,600.00 |
| OFFICE | 4,000.00 |
| PROJECT MGR | 8,000.00 |
| | - |

$ 52,600.00

### OFFICE EXPENSES FOR DS VENTURES

| | |
|---|---:|
| MAIL/SHIPPING | 150.00 |
| UTILITIES | 1,066.00 |
| PHONE/INTERNET | 900.00 |
| XEROX | 240.00 |
| SUPPLIES | 250.00 |
| MISC | 6,500.00 |
| CONSULTANTS | 10,000.00 |
| ACCOUNTING/TAX PREPARATION | 9,000.00 |
| OUTSIDE LEGAL | 25,000.00 |
| BANKING | 700.00 |

53,806.00

### INSURANCE

| | YR | MO | |
|---|---:|---:|---:|
| HARTFORD | 15,000 | 1,250 | 1,250.00 |
| WK COMP | 5,400 | 450 | 450.00 |
| LIABILITY | | | 8,600.00 |
| OFFICE | 35,500 | 2,958.33 | 2,958.33 |

13,258.33

### INTEREST COSTS

| | |
|---|---:|
| US BANK-SECURED NOTE | 824.00 |
| US BANK-SECURED NOTE | 6,947.00 |
| PLAYA DEL REY LOAN | 5,900.00 |
| | - |

13,671.00

### TOTAL MONTHLY BUSINESS EXPENSES                    $   133,335.33

| In re:<br><br>DAVID SCHWARTZMAN | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-16565-MT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406

A true and correct copy of the foregoing document described as **NOTICE OF MOTION AND MOTION BY DEBTOR AND DEBTOR IN POSSESSION FOR ORDER: (1) APPROVING DEBTOR'S ORDINARY COURSE BUDGET 2) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF BRADLEY WOOMER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  June 29, 2009  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

U.S. Trustee, Katherine Bunker, Esq.        kate.bunker@usdoj.gov
Richard J. Bauer, Jr., Esq.                       rbauer@mileslegal.com
Cynthia M. Cohen, Esq.                           cynthiacohen@paulhastings.com
Bernard Given, Esq.                                 bgiven@frandzel.com
Edward Kerns, Esq.                                 EdwardKerns@aol.com

☐ Service Information continued on attached page.

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On  July 109, 2009  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**SEE ATTACHED SERVICE LIST**

☒ Service Information continued on attached page.

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on  July 10, 2009  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Maureen A. Tighe
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite 325
Woodland Hills, CA 91367-6606

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 10, 2009 | Denise Givens | /s/ Denise Givens |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

[VAS\GEN\526774.1]

| In re:<br>DAVID SCHWARTZMAN | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-16565-MT |

*January 2009*                                                                **F 9013-3.1**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**Attorneys for General Electric Capital Corporation**
Peter Gilhuly, Esq.
Latham & Watkins LLP
355 S Grand Ave
Los Angeles, CA 90071-1560

**Request for Special Notice**

**Attorneys for Comerica Bank**
Maria K. Pum, Esq.
Henderson, Caverly, Pum & Charney LLP
PO Box 9144 -  (All U.S. Mail)
16236 San Dieguito Road, Suite 4-13 – (Courier)
Rancho Santa Fe, Ca 92067-9144

**CREDITORS**

American Express
P.O. Box 0001
Los Angeles, CA 90096-8000

Aon Risk Srvs, Inc. of So.Cal.InsSvc
Attn: Charlene Nakamura-Bond Dept
707 Wilshire Blvd., Ste. 6000
Los Angeles, CA 90017

Bank of America
P.O. Box 15026
Wilmington, DE 19850-5026

Bentley Financial Services
P.O. Box 60144
City Of Industry, CA 91716-0144

Capmark Finance, Inc.
Attn: Sheila Neumann
6955 Union Park Centre, Ste. 450
Midvale, UT 84047

Cathay Bank
Attn: Eddie Chang
9650 Flair Drive, 7th Fl.
El Monte, CA 91731

Central Pacific Bank
Attn: Curtis Chinn
220 South King Street
Honolulu, HI 96813

[VAS\GEN\526774.1]This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                **F 9013-3.1**

| | |
|---|---|
| In re:<br>DAVID SCHWARTZMAN<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 1:09-bk-16565-MT |

Comerica Bank
Attn: Steve Lekovsky
2000 Ave of the Stars, Ste. 210
Los Angeles, CA 90067

Countrywide Bank FSB
P.O. Box 10219
Van Nuys, CA 91410-0219

E & R Construction & Management, Inc
Mr. Richard Spunt, President
22011 Ventura Boulevard
Woodland Hills, CA 91364

E&R Construction and Management Inc
5825 W Sunset Boulevard
Los Angeles, CA 90028

East-West Bank
Attn: Jason Tsai
135 N. Los Robles Ave., 7th Fl.
Pasadena, CA 91101

Employment Development Department
Bankruptct Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Fidelity National Title Ins. Co.
Attn: Art Cheyne
1300 Dove St., 3rd Fl.
Newport Beach, CA 92660

First Regional Bank
Attn: Deni Schultz
515 Flower Street, Ste. 1200
Los Angeles, CA 90071

Franchise Tax Board
Special Procedures
PO Box 2952
Sacramento, CA 95812-2952

Frandzel, Robbins, Bloom & Csato
Peter Csato/Thomas M. Robins
6500 Wilshire Blvd., 17th Fl.
Los Angeles, CA 90048

Attorneys for E&R Construction Management
John Gaims Esq.
1875 Century Park East 12th Floor
Los Angeles, CA 90067

GCRE III LLC
Attn: Tom McGarrity
1350 Avenue of the Americas
New York, NY 10019

[VAS\GEN\526774.1]This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of
California.

*January 2009*                                                                 **F 9013-3.1**

| In re:<br><br>DAVID SCHWARTZMAN<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 1:09-bk-16565-MT |
|---|---|

GE Business Financial Services, Inc
Attn: Ingrid Carlino
500 W. Monroe Street
Chicago, IL 60661

Internal Revenue Service
Post Office Box 21126
Philadelphia, PA 19114

Jerry & Jon Monkarsh
9061 Santa Monica Blvd.
West Hollywood, CA 90069

Lehman Ali, Inc., a Del corp
c/o Robert Keane, Esq.
Paul, Hastings, Janofsky & Walker
515 South Flower St., 25th Fl.
Los Angeles, CA 90071

Lehman Brothers Holdings Inc.
399 Park Avenue, 8th Fl.
New York, NY 10022

Mercedes Benz Financial
P.O. Box 9001680
Louisville, KY 40290-1680

Noddle Surety & Ins Services Inc.
Attn: David Noddle
19507 Ventura Blvd.
Tarzana, CA 91356

Optical Communication Products, Inc
Attn: Controller
6101 Variel Avenue
Woodland Hills, CA 91367

Paul, Hastings, Janofsky & Walker
c/o Robert Keane
515 So. Flower St., 25th Fl.
Los Angeles, CA 90071

Preferred Bank
Attn: Anna Choi
3926 Grand Avenue, Suite E
Chino, CA 91710

US Bank
PVT Client Group-Los Angeles, CA
PO Box 790179
Saint Louis, MO 63179-0179

Ziegler Family Trust
Attn: Richard A. Corleto, Trustee
15760 Ventura Blvd., Ste. 801
Encino, CA 91436

[VAS\GEN\526774.1]This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.