1  Mark S. Horoupian (CA Bar No. 175373)
    mhoroupian@sulmeyerlaw.com
2  Victor A. Sahn (CA Bar No. 97299)
    vsahn@sulmeyerlaw.com
3  **Sulmeyer**Kupetz
    A Professional Corporation
4  333 South Hope Street, Thirty-Fifth Floor
    Los Angeles, California  90071-1406
5  Telephone: 213.626.2311
    Facsimile: 213.629.4520
6
    Attorneys for David Schwartzman,
7  Debtor In Possession

8

9              UNITED STATES BANKRUPTCY COURT

10    CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION

11

12  In re                              Case No. 1:09-bk-16565 MT

13                                     Chapter 11

14  DAVID SCHWARTZMAN,
                                       **NOTICE OF MOTION AND MOTION FOR**
15          Debtor in Possession.      **APPROVAL OF COMPROMISE AND**
                                       **TRANSACTION OUTSIDE ORDINARY**
16                                     **COURSE OF BUSINESS;**
                                       **MEMORANDUM OF POINTS AND**
17                                     **AUTHORITIES; AND DECLARATION OF**
                                       **DAVID SCHWARTZMAN IN SUPPORT**
                                       **THEREOF**
18
                                       **DATE:**  May 24, 2010
19                                     **TIME:**   10:00 a.m.
                                       **PLACE:**  U.S. Bankruptcy Court
20                                              Courtroom 302
                                                21041 Burbank Boulevard
21                                              Woodland Hills, CA 91367-6603

22          **PLEASE TAKE NOTICE** that at the time and place ascribed above, David

23  Schwartzman, the above-captioned debtor and debtor in possession (the "Debtor"), will

24  and hereby does move this Court for an order approving a compromise of claims (the

25  "Compromise") in connection with the sale of a loan for which he is a personal guarantor.

26  The Compromise involves a payment by the Debtor of $50,000 in exchange for release of

27  all liabilities associated with his personal guaranty (the "Loan Guaranty") of the loan (the

28  "Cahuenga Loan") made by Preferred Bank ("Preferred") to LB/L-DS Ventures

MHOROUPIAN\ 629535.1

1   Cahuenga, LLC ("Cahuenga").   The Cahuenga Loan is secured by certain real property

2   located at 2775 Cahuenga Boulevard in Hollywood, California 90068 (the "Property").

3   The maximum liability under the Loan Guaranty is $1.55 million.  Preferred has filed a

4   proof of claim in this amount.  The Cahuenga Loan is in default.  A Notice of Default has

5   been recorded and Notice of Sale of the Property given.  The Compromise is part of a

6   transaction which involves the sale of the Cahuenga Loan to a third party.  In connection

7   with its acquisition of the Cahuenga Loan, the third party will form a new entity, Perimeter

8   Group LA Master, LLC ("Perimeter") to acquire and hold the Property.  The acquiring third

9   party desires to enter into a joint-venture with a new entity, Harridge Development

10  Group - Cahuenga, LLC ("Harridge") in which the Debtor will have a 79% membership

11  interest,  to develop the Property.  In connection with this transaction the acquiring entity

12  is willing to release the Debtor under the Loan Guaranty in exchange for a payment of

13  $50,000.  Thus, the Debtor will obtain the release of $1.55 million of potential exposure

14  under the Loan Guaranty in exchange for the payment of payment.  The Debtor and his

15  Estate will obtain the further benefit by virtue of the Debtor's substantial equity

16  participation in the new Project.  Specifically, Harridge will receive a 35% profit

17  participation interest in the Project, of which 79% will belong to the Debtor.

18          As stated herein, the Debtor respectfully submits that the Compromise is in the

19  best interest of the Estate and should be approved.  By payment of $50,000 to the buyer

20  of the Loan, the Debtor obtains a release of over $1.5 million in potential liability on the

21  Loan Guaranty, and preserves the "upside" in the project for the benefit of the Estate.

22  When compared to the options available to preserve the property (as discussed herein),

23  the transaction clearly provides a superior result for the Debtor's estate.

24          **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice

25  of Motion and Motion, the Memorandum of Points and Authorities and Declaration of

26  David Schwartzman in support thereof, the files and pleadings in the Debtor's case, all

27  judicially noticeable facts, and the arguments and testimony to be presented at the

28  hearing on the Motion.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1        **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy

2  Rule 9013-1(f), any party opposing the relief requested in the Motion must file and serve

3  a written opposition no later than fourteen (14) days prior to the hearing on the Motion.

4        **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy

5  Rule 9013-1(h), the failure to timely file and serve an objection to the Motion in

6  accordance herewith may be deemed by the Court to be consent to the relief requested

7  in the Motion.

8        **WHEREFORE**, the Debtor respectfully requests that the Court enter an

9  order approving the Compromise as described herein.

10

11  DATED:  April 27, 2010           **Sulmeyer**Kupetz
                          A Professional Corporation

12

13

14                        By:  */s/ Mark S. Horoupian*
                                   Victor Sahn

15                                   Mark S. Horoupian

16                                   Attorneys for David Schwartzman,
                                   Debtor In Possession

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3
### I.

4
### INTRODUCTION AND BACKGROUND FACTS

5      1.    The Debtor filed a voluntary petition for relief under chapter 11 of the

6 United States Bankruptcy Code on June 1, 2009 (the "Petition Date"). The Debtor is

7 continuing in the operation and management of its business pursuant to Bankruptcy

8 Code sections 1107 and 1108.

9      2.    The Debtor is the managing member and majority equity owner of

10 DS Ventures, LLC, a California Limited Liability Company ("DS Ventures"). The Debtor

11 owns 86% of DS.

12      3.    DS Ventures is engaged in the business of real estate investment

13 and development, primarily in the Southern California region.

14      4.    LB/L DS Ventures Cahuenga, LLC ("Cahuenga") purchased a 5.97

15 acre site located at 2775 Cahuenga Boulevard in Hollywood, California 90068 (the

16 "Property"). Cahuenga's sole member is LB/L-DS Ventures II Master, LLC ("Master II").

17 The members of Master II are DS Ventures and LB/Lakeside Capital Partners, each

18 owning a 50% membership interest. Under the operating agreement of Master II, DS

19 Ventures has become the liquidating member of Cahuenga. Cahuenga is not a debtor in

20 any bankruptcy proceeding at this time.

21      5.    The site has been re-zoned for seventy-five market rate apartment

22 units and a tentative map has been approved. DS Ventures had intended to commence

23 the construction of the Property by either self-funding or the use of outside equity. Due to

24 the current state of the real estate and capital markets, DS Ventures has actively solicited

25 various non-traditional funding sources to obtain the funds necessary to undertake the

26 construction of the Property.

27      6.    The lender on the Property, Preferred Bank ("Preferred"), recorded a

28 Notice of Default against the Property on July 8, 2009. Thereafter, Preferred served a

1   Notice of Sale and scheduled a trustee's sale (the "Trustee's Sale") of the Property.  As

2   DS Ventures continued to explore restructuring options with Preferred, the Trustee's Sale

3   was continued from time to time.  The current Trustee's Sale is currently scheduled for

4   May 7, 2010, and will only be further continued to permit the consummation of the

5   transaction described herein.

6           7.       The Transaction involves two parts:

7           a.       **Loan Sale Agreement**:  The first part of the Transaction

8   involves the acquisition of the Cahuenga Loan by Perimeter from Preferred a loan sale

9   agreement (the "Loan Sale Agreement") between Preferred and Perimeter Group LA

10  Master, LLC ("Perimeter").  Preferred and Perimeter have entered into a Loan Sale

11  Agreement to facilitate this transaction.[1]  The Cahuenga Loan is evidenced by various

12  underlying loan documents, including without limitation, the loan agreement, promissory

13  note, deed of trust, and the Debtor's personal guaranty of the loan obligations (the "Loan

14  Documents").  The Loan Documents will be sold and assigned to Perimeter by Preferred.

15  It is provided that immediately upon the close of this sale transaction, the Debtor's

16  personal liability under the Loan Guaranty will be reduced from the maximum of $1.55

17  million to a maximum of $1.275 million.  Seven (7) days following the closing of the Loan

18  sale transaction Perimeter will cause the Trustee's sale to be completed and will acquire

19  title to the Property thereby.  It is also possible that based upon the state of title to the

20  Property that the transfer of the Property will be accomplished by a deed-in-lieu of

21  foreclosure.

22          Perimeter will pay a portion of the purchase price for the Loan in cash and the

23  balance will be financed by Preferred.  Thus, in connection with the acquisition of the

24  Cahuenga Loan and the Property, Perimeter will execute in favor of Preferred a new

25  _____

26  [1]   The Loan Sale Agreement is governed by the definitive documents entered into
    between Perimeter and Preferred, and this description of the agreement is not intended
27  to modify, alter, amend, or supplement those definitive documents.  Neither the Debtor
    nor LB/L Cahuenga is a party to the Loan Sale Agreement.

28

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  promissory note secured by a new and deed of trust on the Property to secure the

2  financed portion of the Purchase Price.  The new loan will be all due and payable in three

3  years.

4          b.  **Compromise and Joint Venture Agreement between**

5  **Perimeter and Harridge**:

6          (1)   The aforementioned payment of $50,000 from the

7  Debtor will accomplish two things.  First, it will serve to release him from all liability under

8  the Loan Guaranty.  Second, Perimeter has also agreed to credit such sum against the

9  10% capital requirement of Harridge pursuant to the terms of the new joint venture to be

10 entered into with Perimeter.  As stated, the Debtor will be the managing member and

11 holder of 79% of the outstanding membership interests in Harridge.  It is expected that

12 the remaining required capital contributions, if any, will come from sources other than the

13 Debtor's bankruptcy estate.  While not expected to be the case, if further contributions

14 are required form the Debtor's estate in the future, authorization will be sought from this

15 Court as necessary.

16         (2)   Harridge will be co-managing member of the joint

17 venture with Perimeter.  Harridge will also be the administrative member responsible for

18 the day-to-day operations and implementation of the business plan for the Project.

19         (3)   Harridge will be entitled to receive a 10% preferred

20 return on its capital contributions (both deemed and actual), and will receive 35% share

21 of the profits derived from the Project after Perimeter has received a return of its capital

22 and preferred return.

23         (4)   The Debtor may be called upon to execute a

24 replacement limited springing recourse, environmental, and if required, completion

25 guarantees for the Project in connection with any replacement financing for the Project.

26 Unlike the current Loan Guaranty, the Debtor will not be required to execute a loan

27 repayment or recourse guaranty of any such financing.

28 / / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II.

## THE SETTLEMENT SHOULD BE APPROVED

A.      **Standard for Approval of a Compromise**

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides:

> **(a)      Compromise.**  On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.

In evaluating whether to approve a compromise, the court must consider:  (1) the probability of success in the litigation; (2) the complexity of the litigation involved; (3) the expense, inconvenience and delay necessarily attending to it; and 4) the paramount interests of the creditors.  See Martin v. Robinson (In re A&C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854, 107 S. Ct. 189 (1986); see also Protective Comm. for Ind. Stockholders of TMT Trailer Fairy Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1158 (1968); In re MGS Marketing, 11 B.R. 264 (Bankr. 9th Cir. 1990).  Approval of a proposed compromise turns on whether the compromise is in the "best interests of the estate."  St. Paul Fire & Marine Ins. Co. v. Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985); In re Continental Inv. Corp., 637 F.2d 8, 11 (1st Cir. 1980).

A compromise should be approved unless it falls below the lowest point in the range of reasonableness.  See In re Bell & Beckwith, 93 B.R. at 574; Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S. 822, 104 S. Ct. 88 (1985).  "In passing upon the proposed settlement, the court must consider the principal that 'law favors compromise.'"  In re Carson, 82 B.R. 847, 853 (Bankr. S.D. Ohio 1987); Port O'Call Inv. Co. v. Blair (In re Blair), 538 F.2d 849, 851 (9th Cir. 1976).

Specifically, in evaluating whether to approve a compromise, courts in the Ninth Circuit must consider the following:

(a)      The probability of success in litigation;

(b)      the difficulties, if any, to be encountered in the matter of collection;

(c)      the complexity of the litigation involved and the expense;

inconvenience and delay necessarily attending it; and

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    (d)    the paramount interest of the creditors and a proper deference to

2    their reasonable views.

3    A&C Properties, 784 F.2d at 1381.

4    Finally, the compromise approval process does not contemplate that a court

5    will substitute its business judgment for that of a trustee.  To the contrary, a settlement

6    that has been negotiated by a trustee, a representative of the estate, is entitled to

7    deference.  See In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987).

8    B.    **Application of the Standards for Approval to the Proposed Compromise**

9    Distilled to its most basic inquiry, the essence of the Court's inquiry in

10    approving a compromise is whether, after weighing the consideration a debtor is to

11    receive under a compromise versus the consideration is to give, the transaction is

12    reasonable, and within the best interest of the estate.  With respect to the proposed

13    Settlement, the Debtor respectfully submits that it is without question that the

14    Compromise is both reasonable, and in his estate's best interest.  As stated above, and

15    discussed in more detail below, the Compromise benefits the estate in two significant

16    ways.

17    1.    **Release of Liability Under Loan Guaranty**

18    As stated above, the Debtor executed a financial guaranty associated with

19    the Cahuenga Loan.  The Debtor's maximum liability under the Loan Guaranty is

20    $1,550,000.  Preferred has filed a proof of claim in the amount of $1.55 million.  The

21    principal balance on the Loan is currently in excess of $4,000,000.  Preferred has

22    declared the Loan in default, has recorded a notice of default, and scheduled a

23    foreclosure sale.  The foreclosure sale has been continued several times, with the final

24    continuance expressly conditioned upon the execution of the Loan Sale Agreement, and

25    the filing of the Motion seeking the relief sought herein.

26    While the Debtor believes that there is equity in the Property, had the

27    transaction described in the Motion not been agreed upon, and absent a bankruptcy filing

28    by Cahuenga, the Property would be lost to foreclosure.  The Debtor would almost

1   certainly face liability on Loan Guaranty following the foreclosure sale.  Based on

2   Preferred's demonstrated record of bidding significantly less than the appraised value of

3   properties at foreclosure sales, the Debtor is legitimately concerned that Preferred would

4   claim a significant deficiency following foreclosure.[2]  Through the transaction and the

5   Compromise, the Debtor is discharging said liability for $50,000, or approximately three

6   percent (3%) of the total possible exposure on this claim.  The Debtor submits that

7   eliminating that claim from his estate, at such a greatly discounted cost, is justification

8   enough for the approval of the Compromise.

9             If the Compromise should not be approved, with no other immediate source

10  of financing, Cahuenga would be compelled to commence a bankruptcy case in order to

11  protect the perceived equity in the Project by preventing foreclosure.  Such a bankruptcy

12  filing would surely be followed by protracted and costly relief from stay litigation.

13  Presuming that Cahuenga could succeed in preventing foreclosure, as a single asset real

14  estate debtor it would then need to expeditiously prepare and file a plan and disclosure

15  statement to continue on in bankruptcy.  Setting aside the risks of not being able to

16  defeat a relief from stay motion and subsequently being un able to confirm and

17  implement a plan, the attorneys' fees alone incurred in connection with the relief from

18  stay and plan confirmation litigation would likely exceed the $50,000 being proposed to

19  be paid by the Debtor in exchange for the relief from liability under the Compromise.

20                    2.    **Preservation of Equity in the Project**

21            As discussed above, while the benefit of obtaining a release of liability

22  under the Loan Guaranty is, in and of itself, sufficient to justify the approval of the

23  Compromise, as an added benefit, the Debtor will be able to preserve the benefit of any

24  _____

25  [2]   Preferred has filed significant claims on guarantees of loans it made to the Debtor's
    projects referred to as McKinley IV, McKinley V and McKinley VI, where Preferred has
26  foreclosed on the properties and bid between 42% and 56% of their own appraised
    values of the collateral securing said loans.  The Debtor preserves all defenses, offsets,
27  and arguments with respect to said claims.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  profitability in the Project.  Through Harridge, the Debtor's estate will maintain a 27.65%

2  (79% -Debtor's ownership percentage of Harridge- of 35% - Harridge's profit participation

3  percentage) profit participation interest in the Project.  Additionally, Harridge will receive a

4  credit toward its capital contribution requirement for the Debtor's payment of $50,000

5  made to obtain the release of the Loan Guaranty.  The Debtor is getting the benefit of

6  such payment twice.  Also such payment will be repaid when capital is returned by the

7  new venture.

8          As stated, it is not currently anticipated that any further funds will be

9  required from the Debtor's estate.   In the event that the Project requires an additional

10  capital contribution from Harridge, the monies shall either be paid from non-bankruptcy

11  estate funds or will be subject to further authorization of the Court.

12          The Debtor will provide future services as the Project's managing member

13  through Harridge.  With Perimeter as a partner, the Project's chances of yielding a

14  substantial return to the Debtor's estate are notably strengthened.  Perimeter has

15  represented that it has substantial financial backing, and is headed by a principal with a

16  long history in the global real estate market.  Also Perimeter's participation will increase

17  the chances of obtaining the necessary funding to complete the Project.

18          Thus, as stated above, as an added benefit to the Estate and in addition to

19  discharge of the Loan Guaranty claim, the Debtor's payment will enable his estate to

20  remain in the Project, with the chance of a significant potential gain.  The Compromise

21  essentially allows the Debtor to restructure the Cahuenga project without the expense

22  associated with a chapter 11 reorganization.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

### III.

### <u>CONCLUSION</u>

It is without question that the combined benefits of the transaction far exceed the cost to the Estate.   As such, and based upon all of the foregoing, the Debtor respectfully requests that the Court approve the Compromise.  The Debtor further respectfully requests that the Court authorize him to execute such agreements as are necessary to implement the Compromise and Joint Venture agreement described herein.

DATED:  April 27, 2010                    Respectfully submitted,

**Sulmeyer**Kupetz
A Professional Corporation


By:   */s/ Mark S. Horoupian*
      Victor A. Sahn
      Mark S. Horoupian
      Attorneys for David Schwartzman,
      Debtor In Possession

1        **DECLARATION OF DAVID SCHWARTZMAN**

2

3        I, DAVID SCHWARTZMAN, declare as follows:

4        1.        I am a party in the above-entitled action.  I have personal knowledge of the

5   facts set forth herein, which are known by me to be true and correct, and if called as a

6   witness, I could and would competently testify thereto.

7        2.        I am the majority interest-holder and the Managing Member of DS

8   Ventures, LLC ("DSV")  and DMB Ventures, LLC ("DMB").  I have more than eighteen

9   (18) years of real estate experience. I began my real estate development career in

10  California in 1990 with the acquisition and entitlement of land and the construction of

11  single family homes.  In 1993, I founded Patriot Homes, LLC ("Patriot").  Patriot and its

12  related and affiliated entities operated a dynamic real estate development business which

13  successfully acquired, entitled, and permitted properties on which it constructed

14  thousands of single-family homes, condominiums and planned unit developments or

15  PUDs.  In 1999 I founded DS to concentrate on land acquisition and entitlement projects,

16  as well as, the acquisition and development of residential and commercial real property in

17  Central and Southern California.  To date I have acquired developed and/or improved

18  several hundred million of dollars worth of real estate.  Presently, DS and DMB owns or

19  controls over 1,500 lots and units located throughout Central and Southern California in

20  the counties of Santa Barbara, Los Angeles, Fresno and Kern.

21       3.        I filed a voluntary petition for relief under chapter 11 of the United States

22  Bankruptcy Code on June 1, 2009 (the "Petition Date").

23       4.        LB/L DS Ventures Cahuenga, LLC ("Cahuenga") purchased a 5.97 acre

24  site located at 2775 Cahuenga Boulevard in Hollywood, California 90068 (the "Property").

25  Cahuenga's sole member is LB/L-DS Ventures II Master, LLC ("Master II"). The members

26  of Master II are DS Ventures and LB/Lakeside Capital Partners, each owning a 50%

27  membership interest.  Under the operating agreement of Master II, DS Ventures has

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    become the liquidating member of Cahuenga.  Cahuenga is not a debtor in any

2    bankruptcy proceeding at this time.

3        5.      In connection the Cahuenga Loan made by Preferred to Cahuenga, I

4    executed a personal guaranty (the "Loan Guaranty"). The maximum liability under the

5    Loan Guaranty is $1.55 million.  Preferred has filed a proof of claim in this amount.

6        6.      The site has been re-zoned for seventy-five market rate apartment units

7    and a tentative map has been approved.  DS Ventures had intended to commence the

8    construction of the Property by either self-funding or the use of outside equity.  Due to the

9    current state of the real estate and capital markets, DS Ventures has actively solicited

10   various non-traditional funding sources to obtain the funds necessary to undertake the

11   construction of the Property.

12       7.      The lender on the Property, Preferred Bank ("Preferred"), recorded a Notice

13   of Default against the Property on July 8, 2009.  Thereafter, Preferred served a Notice of

14   Sale and scheduled a trustee's sale (the "Trustee's Sale") of the Property.  As DS

15   Ventures continued to explore restructuring options with Preferred, the Trustee's Sale

16   was continued from time to time.  The current Trustee's Sale is currently scheduled for

17   May 7, 2010, and will only be further continued to permit the consummation of the

18   transaction described herein.

19       8.      The Transaction involves two parts:

20           a.      **Loan Sale Agreement**: The first part of the Transaction

21   involves the acquisition of the Cahuenga Loan by Perimeter from Preferred a loan sale

22   agreement (the "Loan Sale Agreement") between Preferred and Perimeter Group LA

23   Master, LLC ("Perimeter").  I am aware that Preferred and Perimeter have entered into a

24   Loan Sale Agreement to facilitate this transaction.[3]  The Cahuenga Loan is evidenced by

25

26   _____

27   [3]   The Loan Sale Agreement is governed by the definitive documents entered into
     between Perimeter and Preferred, and this description of the agreement is not intended
28   to modify, alter, amend, or supplement those definitive documents.  Neither I nor LB/L
     (footnote continued)

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  various underlying loan documents, including without limitation, the loan agreement,

2  promissory note, deed of trust, and the Loan Guaranty (the "Loan Documents").  The

3  Loan Documents will be sold and assigned to Perimeter by Preferred.   It is provided that

4  immediately upon the close of this sale transaction, my liability under the Loan Guaranty

5  will be reduced from the maximum of $1.55 million to a maximum of $1.275 million.

6  Seven (7) days following the closing of the Loan sale transaction Perimeter will cause the

7  Trustee's sale to be completed and will acquire  title to the Property thereby.  It is also

8  possible that based upon the state of title to the Property that the transfer of the Property

9  will be accomplished by a deed-in-lieu of foreclosure.  Perimeter will pay a portion of the

10  purchase price for the Loan in cash and the balance will be financed by Preferred.  Thus,

11  in connection with the acquisition of the Cahuenga Loan and the Property, Perimeter will

12  execute in favor of Preferred a new promissory note secured by a new and deed of trust

13  on the Property to secure the financed portion of the Purchase Price.  The new loan will

14  be all due and payable in three years.

15          b.   **Compromise and Joint Venture Agreement between**

16  **Perimeter and Harridge**

17       (1)   The aforementioned payment of $50,000 from me will

18  accomplish two things.  First, it will serve to release me from all liability under the Loan

19  Guaranty.  Secondly, Perimeter has also agreed to credit such sum against the 10%

20  capital requirement of Harridge pursuant to the terms of the new joint venture to be

21  entered into with Perimeter.  As stated, I will be the managing member and holder of 79%

22  of the outstanding membership interests in Harridge.  It is expected that the remaining

23  required capital contributions, if any, will come from sources other than my bankruptcy

24  estate.  While not expected to be the case, if further contributions are required form the

25  my estate in the future, authorization will be sought from this Court as necessary.

26  _____

27  Cahuenga is a party to the Loan Sale Agreement.

28

1            (2)    Harridge will be co-managing member of the joint

2    venture with Perimeter.  Harridge will also be the administrative member responsible for

3    the day-to-day operations and implementation of the business plan for the Project.

4            (3)    Harridge will be entitled to receive a 10% preferred

5    return on its capital contributions (both deemed and actual), and will receive 35% share

6    of the profits derived from the Project after Perimeter has received a return of its capital

7    and preferred return.

8        9.    Under the agreement, I may be called upon to execute a replacement

9    limited springing recourse, environmental, and if required, completion guarantees for the

10   Project in connection with any replacement financing for the Project.  Unlike the current

11   Loan Guaranty, I will not be required to execute a loan repayment or recourse guaranty

12   of any such financing.

13       10.    While I believe that there is equity in the Property, had the transaction

14   described in the Motion not been agreed upon, and absent a bankruptcy filing by

15   Cahuenga, the Property would be lost to foreclosure.  I would almost certainly face

16   liability on Loan Guaranty following the foreclosure sale.  Based on Preferred's

17   demonstrated record of bidding significantly less than the appraised value of properties at

18   foreclosure sales, I am concerned that Preferred would claim a significant deficiency

19   following foreclosure.[4]  Through the transaction and the Compromise, I am discharging

20   said liability for $50,000, or approximately three percent (3%) of the total possible

21   exposure on this claim.  I submit that eliminating that claim from my estate, at such a

22   greatly discounted cost, is justification enough for the approval of the Compromise.

23   / / /

24   _____

25   [4]  Preferred has filed significant claims on guarantees of loans it made to my projects
referred to as McKinley IV, McKinley V and McKinley VI, where Preferred has foreclosed

26   on the properties and bid between 42% and 56% of their own appraised values of the

27   collateral securing said loans.  I preserve all defenses, offsets, and arguments with
respect to said claims.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311  •  FAX 213.629.4520

11.    If the Compromise should not be approved, with no other immediate source of financing, Caheunga would be compelled to commence a bankruptcy case in order to protect the perceived equity in the Project by preventing foreclosure. Such a bankruptcy filing would surely be followed by protracted and costly relief from stay litigation. Presuming that Caheunga could succeed in preventing foreclosure, as a single asset real estate debtor it would then need to expeditiously prepare and file a plan and disclosure statement to continue on in bankruptcy. Setting aside the risks of not being able to defeat a relief from stay motion and subsequently being un able to confirm and implement a plan, the attorneys' fees alone incurred in connection with the relief from stay and plan confirmation litigation would likely exceed the $50,000 being proposed to be paid by me in exchange for the relief from liability under the Compromise.

12.    As discussed above, while the benefit of obtaining a release of liability under the Loan Guaranty is, in and of itself, sufficient to justify the approval of the Compromise, as an added benefit, I will be able to preserve the benefit of any profitability in the Project. Through Harridge, my estate will maintain a 27.65% (79% -Debtor's ownership percentage of Harridge of 35% - Harridge's profit participation percentage) profit participation interest in the Project. Additionally, Harridge will receive a credit toward its capital contribution requirement for the payment of $50,000 made to obtain the release of the Loan Guaranty. My estate is, therefore, getting the benefit of such payment twice. Also such payment will be repaid when capital is returned by the new venture.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 27, 2010, at Los Angeles, California.

DAVID SCHWARTZMAN

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANG LES, CALIFORNIA 90071-1406
TEL 213.626.2311 · FAX 213.629.4520

| | |
|---|---|
| In re:<br><br>DAVID SCHWARTZMAN<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 1:09-bk-16565 MT |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406

A true and correct copy of the foregoing document described as **"NOTICE OF MOTION AND MOTION FOR APPROVAL OF COMPROMISE AND TRANSACTION OUTSIDE ORDINARY COURSE OF BUSINESS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF DAVID SCHWARTZMAN IN SUPPORT THEREOF"** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>April 27, 2010</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

| | | |
|---|---|---|
| ➤ | Katherine Bunker, Esq. – Office of the U.S. Trustee | kate.bunker@usdoj.gov |
| ➤ | Richard J. Bauer, Jr., Esq. – Courtesy NEF | rbauer@mileslegal.com |
| ➤ | Cynthia M. Cohen, Esq. – Lehman Bros. Holdings Inc./Lehman ALI Inc. | cynthiacohen@paulhastings.com |
| ➤ | David K. Eldan, Esq. – Atty for Preferred Bank | malvarado@pmcos.com |
| ➤ | Heather Fowler, Esq. – Atty for General Electric Capital Corp. | heather.fowler@lw.com |
| ➤ | Bernard R. Given, Esq. – Atty for Central Pacific Bank | bgiven@frandzel.com |
| ➤ | Kelly C. Griffith, Esq. – Bond Safeguard Insurance Co. | bkemail@harrisbeach.com |
| ➤ | Brian T. Harvey, Esq. – Atty for Cathay Bank | bharvey@buchalter.com |
| ➤ | Mark S. Horoupian, Esq. — Atty for Debtor | mhoroupian@sulmeyerlaw.com |
| ➤ | William W. Huckins, Esq. – U.S. Bank, N.A. | whuckins@allenmatkins.com |
| ➤ | Edward P. Kerns, Esq. – Courtesy NEF | EdwardKerns@aol.com |
| ➤ | Joe M. Lozano, Esq. – Atty for VW Credit, Inc. | notice@NBSDefaultServices.com |
| ➤ | Douglas M. Neistat, Esq. – Courtesy NEF | twilliams@greenbass.com |
| ➤ | Office of the U.S. Trustee | ustpregion16.wh.ecf@usdoj.gov |
| ➤ | Henry H. Oh, Esq. – Joint Provisional Liquidators of Lehman Re Ltd. | henry.oh@dlapiper.com |
| ➤ | Maria K. Pum, Esq. – Atty for Comerica Bank | mpum@hcesq.com |
| ➤ | Victor A. Sahn, Esq. – Atty for Debtor | vsahn@sulmeyerlaw.com |
| ➤ | Steven F. Werth, Esq. — Atty for Debtor | swerth@sulmeyerlaw.com |

☐ Service Information continued on attached page.

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On <u>April 27, 2010</u>, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first-class postage prepaid, and/or with an overnight mail service addressed as follow. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

**The Hon. Maureen A. Tighe**
**U.S. Bankruptcy Court**
**21041 Burbank Blvd., Suite 325**
**Woodland Hills, CA 91367-6606**

☒ Service Information continued on attached page.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

| In re:<br><br>DAVID SCHWARTZMAN<br><br>                    Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 1:09-bk-16565 MT |
|---|---|

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on <u>April 27, 2010</u>, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

| | |
|---|---|
| ➢ Richard A. Corleto, Trustee of the Ziegler Family Trust | rcorleto@cahlaw.com |
| ➢ Ted A. Dillman, Esq. -- General Electric Capital Corp. | ted.dillman@lw.com |
| ➢ B. Jill MacGregor Draffin, Esq. — Preferred Bank | jmd@ffslaw.com |
| ➢ John Gaims, Esq. – E & R Construction & Mgmt., Inc. | jgaims@gwwe.com |
| ➢ Arthur A. Greenberg, Esq. – Greenberg & Bass LLC | agreenberg@greenbass.com |
| ➢ Danielle Amarel Katzir, Esq. — Perimeter Group LA Master, LLC | dkatzir@gibsondunn.com |
| ➢ Robert Keane, Esq. – Lehman Ali, Inc. | robertkeane@paulhastings.com |
| ➢ Lawrence F. Morrison, Esq. – Meister Seelig & Fein LLP | lfm@msf-law.com |
| ➢ Gregory M. Petrick, Esq. – Joint Provisional Liquidators of Lehman Re Ltd. | gregory.petrick@cwt.com |
| ➢ Betty M. Shumener, Esq. – Joint Provisional Liquidators of Lehman Re Ltd. | betty.shumener@dlapiper.com |
| ➢ Barry G. West, Esq. – Gaims Weil, West & Epstein | bgwest@gwwe.com |

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 27, 2010 | Kathleen Fox | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**In re David Schwartzman**
**Case No. 1:09-bk-16565 MT**
**ALL CREDITOR LIST**

SKDOCS_WD-#530217-v1
[9640.2]

American Express
P.O. Box 0001
Los Angeles, CA  90096-8000

Aon Risk Srvs, Inc. of So. Cal. Ins. Svc.
Attn:  Charlene Nakamura-Bond Dept
707 Wilshire Blvd., Suite 6000
Los Angeles, CA  90017-3543

Bank of America
P.O. Box 15026
Wilmington, DE  19850-5026

Bentley Financial Services
P.O. Box 60144
City Of Industry, CA  91716-0144

Bond Safeguard/Lexon Ins.
256 Jackson Meadows Dr.
Hermitage, TN  37076-1425

Capmark Finance, Inc.
Attn:  Sheila Neumann
6955 Union Park Centre, Suite 450
Midvale, UT  84047-6523

Cathay Bank
Attn:  Eddie Chang
9650 Flair Dr., 7th Floor
El Monte, CA  91731-3005

Central Pacific Bank
Attn:  Curtis Chinn
220 S. King St.
Honolulu, HI  96813-

Comerica Bank
Attn:  Steve Lekovsky
2000 Ave of the Stars, Suite 210
Los Angeles, CA  90067-4704

Countrywide Bank, FSB
P.O. Box 10219
Van Nuys, CA  91410-0219

David Schwartzman
22255 Mulholland Drive
Woodland Hills, CA  91364-4932

E & R Construction & Mgmt., Inc.
Attn:  Mr. Richard Spunt, President
22011 Ventura Blvd.
Woodland Hills, CA  91364-1646

East-West Bank
Attn:  Jason Tsai
135 N. Los Robles Ave., 7th Floor
Pasadena, CA  91101-4525

East West Bank
c/o Richard P. Tricker, Esq.
Anderson McPharlin & Conners LLP
444 S. Flower St., 31st Floor
Los Angeles, CA  90071-2901

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA  94280-0001

Fidelity National Title Ins. Co.
Attn:  Art Cheyne
1300 Dove St., 3rd Floor
Newport Beach, CA  92660-2414

First Regional Bank
Attn:  Deni Schultz
515 Flower St., Suite 1200
Los Angeles, CA  90071-2236

Franchise Tax Board
Special Procedures
P.O. Box 2952
Sacramento, CA  95812-2952

GCRE III, LLC
Attn:  Tom McGarrity
1350 Avenue of the Americas
New York, NY  10019-4702

GE Business Financial Services, Inc
Attn:  Ingrid Carlino
500 W. Monroe St.
Chicago, IL  60661-3671

GE Business Financial Services, Inc.
Attn:  Karen Lieberman, Esq.
GE Real Estate
500 W. Monroe St., 15th Floor
Chicago, IL  60661

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA  19114-0326

Lehman Brothers Holdings, Inc.
399 Park Ave., 8th Floor
New York, NY  10022-4614

Lehman ALI, Inc./
Lehman Brothers Holdings, Inc.
Attn:  Joelle Halperin
1271 Ave of the Americas, 46th Floor
New York, NY  10020-1401

Mercedes Benz Financial
P.O. Box 9001680
Louisville, KY  40290-1680

Jerry & Jon Monkarsh
9061 Santa Monica Blvd.
West Hollywood, CA  90069-5520

Noddle Surety & Ins. Services Inc.
Attn:  David Noddle
19507 Ventura Blvd.
Tarzana, CA  91356-2916

Katherine Bunker, Esq.
Office of the U.S. Trustee (SV)
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367-6550

Optical Communication Products, Inc.
Attn:  Stephen Welles
c/o Oplink Communications
46335 Landing Parkway
Fremont, CA  94538-6407

Optical Communication Products, Inc
Attn:  Controller
6101 Variel Ave.
Woodland Hills, CA  91367-3722

Preferred Bank
Attn:  Anna Choi
3926 Grand Ave., Suite E
Chino, CA  91710-8402

US Bank, N.A.
P.O. Box 5229
Cincinnati, OH  45201-5229

US Bank
PVT Client Group-Los Angeles, CA
P.O. Box 790179
Saint Louis, MO  63179-0179

VW Credit, Inc.
P.O. Box 829009
Dallas, TX  75382-9009

Wells Fargo Bank, N.A.
Trustee for ML-CLC C
c/o K&L Gates LLP
10100 Santa Monica Blvd., 7th Floor
Los Angeles, CA  90067-4003